WILLIAM DWYER, Plaintiff-Appellee, *v.* THE POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

(No. 60421;

First District (1st Division)—August 4, 1975.

Richard L. Curry, Corporation Counsel, of Chicago (Daniel Pascale, Lucia T. Thomas, and Michael J. Kelly, Assistant Corporation Counsel, of counsel), for appellants.

Lester D. McCurrie, of Oak Lawn (John J. O'Tolle, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

William Dwyer (plaintiff) was discharged from his position as captain on the Chicago Police Force by a decision of the Police Board of the city of Chicago. After administrative review, this decision was reversed by the circuit court and plaintiff was ordered restored to his former position. The Board prosecutes this appeal.

The Board urges that the fifth amendment privilege does not entitle

a witness to commit perjury; and the decision of the Board was not contrary to the manifest weight of the evidence. In response plaintiff urges that the circuit court properly reversed the decision of the Board since the rules of the police department upon which this decision was based are unconstitutional and the findings and decision of the Board are not supported by substantial evidence.

The pertinent facts are not difficult. Plaintiff was appointed to the police department in September of 1953. Ten years later, he attained the rank of captain. Pursuant to subpoena, plaintiff appeared before the grand jury of the United States District Court for the Northern District of Illinois, in Chicago, on December 15, 1971. Plaintiff was asked where he was employed. He then invoked his constitutional privilege and declined to answer on ground of self-incrimination. The record also shows the following question by the United States Attorney and answer by plaintiff.

"Q. You don't even want to answer where you're presently employed; is that right?

A. No, sir."

On December 31, 1971, plaintiff executed written responses to a written interrogatory propounded by the Internal Affairs Division of the Police Department. In this interrogation, plaintiff was advised that the allegation had been made that he had failed to testify before the grand jury or failed to answer questions regarding performance of his official duties as a police officer so that he was therefore in violation of police rules and regulations. In responding, plaintiff stated, in pertinent part, that he did refuse to answer questions directed to him before the grand jury. He stated that he was asked his name and address and that he answered these questions. He further stated:

"They did not ask my rank or where I was employed or if I was a police officer, or where I was assigned."

Plaintiff further responded that he did not refuse to answer any questions relating to his conduct as a police officer of the city of Chicago but that he invoked his privilege against self-incrimination. On March 11, 1972, plaintiff was suspended from duty.

In due course, charges were filed before the Police Board alleging violation by plaintiff of these rules of the police department:

Rule 2—Any action or conduct which impedes the Department's efforts to achieve its goals, or brings discredit upon the Department.

Rule 3—Any failure to promote the Department's efforts to accomplish its goals.

Rule 13—Making a false report, written or oral.

Rule 51—Failing to give evidence before the Grand Jury, Coroner's Inquest, in court, or before any governmental administrative body, including the Police Board, when properly called upon to do so, or refusing to testify on the grounds that such testimony might incriminate the member, or refusing to sign a waiver of immunity when requested to do so by a superior officer.

At the hearing before the Board, plaintiff offered evidence pertaining to his mental condition at the time he made the report to his superiors, resulting from a rather serious back injury previously sustained by him, as well as a number of tragic and demoralizing family misfortunes concerning the death of his father, and illness of his wife and children. Plaintiff also introduced evidence of his excellent reputation for truth and veracity among his fellow officers and associates and excellence in the performance of his duties. The decision of the Board found plaintiff guilty of violation each of Rules 2, 3, 13 and 51.

Analysis of the rights of these parties must commence from the decision in *Confederation of Police v. Conlisk* (7th cir. 1973), 489 F.2d 891, *cert. den.*, 416 U.S. 956. There, six police officers were subpoened before a grand jury investigating alleged conspiracy and corruption in the Chicago Police Department. After proper warning, relying on advice of counsel, each plaintiff invoked his constitutional privilege and refused to answer questions. Thereafter, each policeman was summoned to appear before the Internal Affairs Division and was questioned (with one exception) not regarding performance of his police duties but regarding the exercise of the privilege against self-incrimination before the grand jury. All were suspended and then discharged by the Police Board for violating Rule 51 (above set forth), also Rule 2 for conduct impeding the Department's efforts to achieve its goals; Rule 5 concerning failure to perform a duty and Rule 6 pertaining to disobedience of an order or directive.

The court of appeals held that "Rule 51, to the extent that it denies police officers the privilege against self-incrimination where criminal prosecution may follow, is constitutionally invalid." The court also held that the remaining rules involved (2, 5 and 6) were unconstitutional as applied in the case because they were used only in conjunction with Rule 51 in effecting the discharge of plaintiffs and that "[t]he underlying 'violation' in each case was the exercise of the privilege against self-incrimination before the grand jury, which was prohibited by Rule 51." (489 F.2d 891, 895.) In reaching this decision, the court of appeals cited and relied upon *Garrity v. New Jersey*, 385 U.S. 493, 17 L.Ed.2d 562, 87 S.Ct. 616; *Spevack v. Klein*, 385 U.S. 511, 17 L.Ed.2d 574, 87 S.Ct. 625; *Gardner v. Broderick*, 392 U.S. 273, 20 L.Ed.2d 1082, 88 S.Ct. 1913

and *Uniformed Sanitation Men Association v. Commissioner of Sanitation*, 392 U.S. 280, 20 L.Ed.2d 1089, 88 S.Ct. 1917.

Examination of the entire record in the case before us leads to the conclusion that it is virtually identical to the situation presented in *Confederation of Police*. The gravemen of the complaint against plaintiff is the fact that he saw fit to exercise his constitutional privilege against self-incrimination.

As regards Rules 2, 3 and 13, his alleged violation thereof is predicated upon the identical facts and reasoning; his refusal to answer questions before the grand jury on the ground of his constitutional privilege against self-incrimination. This is true as regards the purported violation of each of the rules other than Rule 51. His interrogation before the Internal Affairs Division was directed solely to the same subject matter. Precisely as in *Confederation of Police*, none of the questions put to plaintiff before the Internal Affairs Division had any relation whatsoever to "his 'official duties,' using that term in the sense of obligations ordinarily associated with police work as such." (489 F.2d 891, 892.) Thus, it follows that plaintiff may not be disciplined for any response made by him to an inquiry concerning whether he exercised his fifth amendment rights. In addition, "[t]he underlying 'violation' in each case was the exercise of the privilege against self-incrimination before the grand jury, which was prohibited by Rule 51." 489 F.2d 891, 895.

We will follow and apply the decision in *Confederation of Police* to the case before us even though that decision standing alone would not be binding upon this court. (See *People v. West*, 3 Ill.App.3d 106, 116, 278 N.E.2d 233, citing *People v. Stansberry*, 47 Ill.2d 541, 544, 268 N.E.2d 431.) Nor would denial of certiorari by the United States Supreme Court add validity or weight to the decision of the court of appeals. " 'The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times.' " (*Brown v. Allen*, 344 U.S. 443, 491, 492, 97 L.Ed. 469, 507, 73 S.Ct. 397; 32 Am.Jur. 2d *Federal Practice & Procedure* § 229, at 682 (1967).) However, the opinion of the court of appeals found expressly that the situation before it was governed by previous decisions of the United States Supreme Court; namely, *Gardner* and *Sanitation Men* (489 F.2d 891, 895), and decisions of the Supreme Court are both authoritative and binding upon this court. We concur in the conclusion reached by the court of appeals regarding the application and effect of these decisions. We will add that reaching a different result in the situation before us would be contrary to legal logic and sound policy. The fifth amendment protection against self-incrimination is too valuable and important to be denied or even curtailed under the type of circumstances here presented.

·It follows necessarily that the judgment appealed from is affirmed. Under the view we have taken, it is unnecessary for us to consider the remaining contention of the Board regarding the manifest weight of the evidence.

Judgment affirmed.

BURKE, P. J., and SIMON, J., concur.