THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MAURICE BEACHAM, Defendant-Appellant.

First District (3rd Division)   No. 61132

Opinion filed June 29, 1977.

Patrick A. Tuite, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Renee G. Goldfarb, and Randolph T. Kemmer, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

A jury convicted Maurice Beacham, a Chicago police officer, of attempt murder, two counts of aggravated battery, three counts of perjury and two counts of obstruction of justice. On appeal, Beacham contends: (1) the State failed to prove beyond a reasonable doubt that he was not acting in self-defense or that he was guilty of perjury; (2) he was prejudiced by the joinder of the perjury count; (3) the proof of obstruction of justice did not conform to the allegations in the indictment; and (4) the prosecutor's closing argument was intentionally misleading and prejudicial. We reject these contentions and affirm the judgment of conviction.

Leroy Watts, a tenant in an apartment building owned by Beacham, moved out of his apartment. The next day, while Beacham and Watts were in the apartment, a fight began and Beacham shot Watts. Watts and Beacham were the only two occurrence witnesses.

Watts testified that Beacham ordered him to remove garbage Watts had left in the kitchen. When Watts refused and tried to leave, Beacham shot him in the chest. Watts ran into the dining room and threw up his hands,

pleading with Beacham not to shoot him again. Beacham shot him in the stomach and told Watts to go back to the living room. Watts went into the living room and knelt when Beacham told him to do so. Beacham then shot him twice in the shoulder and arm, struck Watts in the head with the gun, told Watts he was under arrest and ordered him out of the apartment. When they reached the open front door, Watts shoved Beacham. Beacham's back hit the stairway, the gun fired, Watts fell on Beacham and then jumped up and back into the apartment and held the door closed against Beacham.

According to Beacham, he shot Watts in self-defense. He testified that after they argued about cleaning out the garbage, Watts knocked him down and attacked him with a knife. The men came together, Watts cut Beacham through his jacket with the knife and Beacham hit Watts in his head with his gun. They kept fighting as they moved through the dining room to the living room, with Watts controlling the scuffle. As Watts pushed Beacham out the door, Beacham fired his gun. Beacham landed on his back on the stairs outside the door with his feet facing downward, and Watts fell on top of Beacham torso to torso. By this time Beacham's jacket had risen up over his head. Beacham raised his gun and fired three successive shots into Watts, who jumped up and begged Beacham not to kill him. Watts then ran back into the apartment and tried to prevent Beacham from entering by pushing against the door. Beacham told his cousin, Gregory Beacham to call the police.

When the police arrived, Beacham identified himself as a police officer and told them that Watts had attacked him with a knife which he then gave to one of the officers. Watts was taken to the hospital, where his wounds were treated, and the police found a knife in Watts' clothing. A physician connected with the chief surgeon's office of the Chicago Police Department testified that Beacham came to his office at 8:30 the morning after the shooting. The physician testified he examined Beacham and found he had contusions of the lower back and two scratches on his left mid-abdomen, which the physician labelled superficial. He further testified that the scratches could have been inflicted by anything that was sharp, and based on the encrusted blood on the scratches, they could have been inflicted from 6 hours to 72 hours prior to the examination. The incident for which Beacham was convicted occurred about 2 o'clock the afternoon before his examination.

Beacham signed two misdemeanor complaints for aggravated assault and battery against Watts; eventually, these charges were dropped and Watts filed a complaint against Beacham. Beacham was indicted for the substantive offenses of which he was convicted. One of the perjury counts related to false testimony before the grand jury and two counts to false complaints Beacham made against Watts. The obstruction of justice

counts covered Beacham's furnishing false information to law enforcement agencies and handing the police a knife he claimed Watts used. The aggravated battery counts were for using a deadly weapon and for causing great bodily harm to Watts.

There was no dispute that Watts received gunshot wounds and that Beacham did the shooting. Beacham's affirmative defense to the attempt murder and aggravated battery charges was that the shooting was in self-defense. This required the State to prove beyond a reasonable doubt that he was not acting in self-defense. Ill. Rev. Stat. 1973, ch. 38, pars. 3—2, 7—14.

Watts testified that he first was shot in the kitchen and then ran into the dining room, where he was shot again, following which he was shot twice in the living room. Beacham, on the other hand, testified that the shooting took place on the steps outside the apartment. Large quantities of blood found in the apartment support Watts' testimony and discredit Beacham's. The physician who treated Watts did not remember any noticeable head injury to Watts and the medical reports did not indicate Watts suffered any head wounds. Thus, the blow in the head Beacham claimed he gave Watts with his gun inside the apartment was not likely to have caused the amount of blood that was found.

The State's expert witness, the doctor who treated Watts for his injuries, testified that two of the bullets entered his body from an upward to a downward angle. This is in keeping with Watts' story that he was on his knees in the living room when Beacham fired the last two shots. Beacham's account that he fired three shots in rapid succession while Watts was on top of him on the apartment steps, torso to torso, does not explain the downward trajectory of two of the shots Watts received.

Beacham suggests several reasons why the State's evidence is so improbable, unconvincing and contrary to human nature as to require reversal. First, he questions Watts' ability to have pushed Beacham out of the apartment after Watts had been shot four times. Yet, the record shows that Watts was strong enough to walk to the police vehicle which took him to the hospital and that Watts testified he shoved Beacham when Beacham was looking away, and so caught him unawares. Second, Beacham contends that the bullet hole in Beacham's jacket is inconsistent with Watts' testimony. But Watts testified that immediately after he shoved Beacham onto the stairs, the gun fired but missed Watts. This could have been the shot that went through Beacham's jacket. Third, Beacham says that the presence of cuts in his jacket, scratch marks on his side and contusions on his back discredit Watts' story. At trial, a microanalyst testified that the leather jacket straps had been pulled apart rather than cut. The scratch marks on Beacham's side were superficial and he could have inflicted them on himself before he was examined by the

police department physician to lend credence to his self-defense story. Similarly, he could have torn his own jacket. His back contusions do not conflict with Watts' version, since Watts told the court Beacham fell on his back when he pushed Beacham down on the stairs. Fourth, Beacham argues that Watts' blood could not have gotten on Beacham if Watts' story were true. However, Watts testified that after he had been shot four times and shoved Beacham outside the apartment, he fell directly on top of Beacham; this would account for the blood on Beacham and does not discredit Watts' testimony.

■■■ Finally, Beacham contends that because the State failed to call witnesses to testify about whose blood was on Beacham's clothing, whether there were powder burns on Watts' clothing, where the spent bullets were found, and how many bullets were left in Beacham's gun when the police arrived, the proper inference is that such testimony would have hurt the State's case. In this case, it is unclear whether there were witnesses available who could have testified on the matters Beacham raises. But, even if witnesses with such knowledge were available, the State would not have been obligated to present them. The State is not required to present every witness to a crime or every possible expert witness who might testify to some facet of a crime, and it need not seek out and disprove every possible alternative explanation of a crime before an accused can be found guilty. Here the State was free to accept the risk that the jury might draw negative inferences from its failure to offer evidence if it otherwise proved beyond a reasonable doubt that Beacham was not acting in self-defense. *People v. Scott* (1967), 38 Ill. 2d 302, 306, 231 N.E.2d 441; *People v. Jones* (1964), 30 Ill. 2d 186, 190, 195 N.E.2d 698.

■■ Whether Beacham acted in self-defense was a question of fact for the jury. (*People v. Pearson* (1976), 40 Ill. App. 3d 315, 317-318, 352 N.E.2d 240; *People v. Akins* (1976), 39 Ill. App. 3d 908, 912, 351 N.E.2d 366.) While Beacham's version of the shooting directly contradicted Watts', the jury, which heard and saw both witnesses, was free to believe Watts and disbelieve Beacham. In addition, the State's circumstantial evidence—the blood in the apartment and the expert testimony about the bullets' trajectory—was sufficient to convince the jury beyond a reasonable doubt that Beacham was not acting in self-defense. It supported Watts' version and rendered Beacham's unlikely.

■■■ A reviewing court will not set aside a jury verdict unless it is so unsatisfactory as to raise a reasonable doubt of the defendant's guilt. The evidence here was not so unsatisfactory as to raise a reasonable doubt about whether Beacham was acting in self-defense, and this court should not substitute its judgment for that of the jury, particularly when that decision primarily depended on the credibility of two witnesses the jury

observed and heard. *People v. Schwartz* (1974), 58 Ill. 2d 274, 278, 319 N.E.2d 23; *People v. Pickett* (1976), 35 Ill. App. 3d 909, 913, 342 N.E.2d 766.

Beacham contends the State failed to prove him guilty of perjury both because there was no proof or stipulation in the record that he was under oath when he testified before the grand jury, and because there was no showing that his false testimony was material to the grand jury inquiry.

■■■ Proof of the charge of perjury requires that sufficient evidence be offered for the jury to find beyond a reasonable doubt that an oath was administered to the defendant by a duly authorized officer, before he gave his allegedly false testimony. At the trial, through his attorney, Beacham stipulated with the prosecution that if Lucia Coffey had been called to testify, she would have told the court she was an official court reporter and took down Beacham's testimony before the grand jury. This transcript, including the following introductory statement, was read to the jury by the State's Attorney, without objection by defense counsel: "Officer Maurice Beacham, having been first duly sworn, was examined and testified as follows." It is clear that Beacham stipulated to what the court reporter would have testified had she been called as a witness and that the stipulation included the statement that Beacham was duly sworn before the grand jury. After Beacham permitted the evidence that an oath had been administered to be read to the jury, he lost any right to require the State to produce additional proof that he was under oath before the grand jury. In addition, the court reporter later was called by the State to rebut Beacham's trial testimony. She testified that she took down his testimony before the grand jury and transcribed it. She further testified that everything in the transcript was as she had taken it down. This testimony, in conjunction with the statement included in the transcript that Beacham had been duly sworn, constituted proof beyond a reasonable doubt that Beacham was under oath before the grand jury.

*Smith v. United States* (5th Cir. 1966), 363 F.2d 143, cited by Beacham, is not applicable here. As the court observed in *United States v. Edwards* (8th Cir. 1971), 443 F.2d 1286, 1291, in *Smith* there was no stipulation to the oath and no testimony by the court reporter who took the testimony and prepared the transcript.

■■ To support a perjury conviction, a false statement must be proven material to the matter at hand—in this case, the grand jury investigation. Beacham contends there was no showing his false testimony was material to the grand jury inquiry. Beacham's stipulated testimony before the grand jury read into the record at trial established that, while he was before the grand jury, Beacham understood that he had been subpoenaed because the grand jury was investigating Watts' complaint that Beacham unlawfully shot him. His testimony before the grand jury that he lawfully

shot Watts in self-defense clearly was material to the grand jury's investigation of the alleged unlawful shooting of Watts. Since the evidence demonstrated that Beacham was under oath when he made false statements material to the grand jury investigation, he properly was convicted of perjury.

■■ Beacham argues that he was prejudiced by the joinder of the grand jury perjury count with the other counts of the indictment related to the shooting because the perjury count impeached his testimony at trial. The perjury charge that Beacham lied to the grand jury stood or fell with the jury finding on the attempt murder and aggravated battery counts. If the jury had found that Beacham shot Watts in self-defense, then it necessarily would have found him innocent of the perjury charge. When the trial jury convicted Beacham of the substantive offenses, it was understandable that it also found him guilty of perjury before the grand jury, since he told essentially the same story to both juries. In addition, Beacham neither objected to the joinder of charges at trial nor argued that a severance was compelled when his motion for a new trial was presented, and, therefore, he waived this objection. *People v. Mayberry* (1976), 63 Ill. 2d 1, 6, 345 N.E.2d 97; *People v. Curry* (1973), 56 Ill. 2d 162, 170, 306 N.E.2d 292.

■■ The concerns Beacham advances, that the trial jurors might have been influenced because they felt the grand jurors already had disbelieved his testimony or that the trial jurors may not have understood that the standard of certainty required of a grand jury in returning an indictment is different from that required of a grand jury to convict, do not justify reversal. Trial by jury is based on the assumption that jurors are capable of distinguishing between allegations in an indictment and evidence establishing guilt, and that jurors will decide issues of fact according to their independent evaluation of the evidence rather than because a defendant has been indicted. (*United States v. Irali* (7th Cir. 1974), 503 F.2d 1295; *United States v. Pacente* (7th Cir. 1974), 503 F.2d 543, *cert. denied* (1974), 419 U.S. 1048, 42 L. Ed. 2d 642, 95 S. Ct. 623.) And, since the jury in this case was instructed that the indictment is only the formal method of accusing a defendant of a crime and does not create any inference of guilt, Beacham was not prejudiced by the joinder.

■■ ■ Beacham contends that the joinder prejudiced him for another reason, stating that when he appeared before the grand jury, Rule 51 of the Chicago Police Department required him to testify before that body or be discharged. Beacham argues that had he not testified he would have lost his job and pension rights, and so had no alternative but to deny the allegations and be charged with perjury. Despite the implicit threat of discharge in the department rule, Beacham could have invoked the privilege against self-incrimination and then asserted the department

could not lawfully have discharged him for insisting on his fifth amendment rights. (*Gardner v. Broderick* (1968), 392 U.S. 273, 20 L. Ed. 2d 1082, 88 S. Ct. 1913; *Confederation of Police v. Conlisk* (7th Cir. 1973), 489 F.2d 891, *cert. denied* (1974), 416 U.S. 956, 40 L. Ed. 2d 307, 94 S. Ct. 1971; *Dwyer v. Police Board* (1975), 31 Ill. App. 3d 246, 334 N.E.2d 239.) In any event, if Rule 51 had a compulsive effect, this did not justify Beacham's false testimony. *United States v. Irali* (7th Cir. 1974), 503 F.2d 1295; *United States v. Pacente* (7th Cir. 1974), 503 F.2d 543, *cert. denied* (1974), 419 U.S. 1048, 42 L. Ed. 2d 642, 95 S. Ct. 623; *Thanasouras v. Police Board* (1975), 33 Ill. App. 3d 1012, 339 N.E.2d 504.

Beacham also contends there was a fatal variance between the proof and the allegation on the indictment counts charging him with obstruction of justice. His argument is that the indictments charged that, by furnishing false information to law enforcement agencies and handing the police false evidence before the indictments were returned, he acted with intent to "obstruct" his own "prosecution." He claims that because a defendant cannot obstruct a prosecution until after he has been charged with an offense, and any false information he may have furnished, or any false evidence he may have provided in this case would have been furnished before his prosecution began, he was in fact convicted of acting with intent to "prevent" his "apprehension." Accordingly, Beacham alleges he was indicted on one charge but convicted on another.

■■ If an offense charged is sufficiently set forth so that an accused can properly prepare his defense and raise the judgment as a plea in bar to a later prosecution for the same offense, a variance between the allegations and proof will not be fatal. (*People v. Johnson* (1976), 65 Ill. 2d 332, 357 N.E.2d 1166; *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437; *People v. Adams* (1970), 46 Ill. 2d 200, 263 N.E.2d 490.) Here, the indictment delineated the elements of the offense of obstructing justice, and the specific facts constituting that offense. Beacham was not misled in preparing his defense and would not have been subjected to the danger of double jeopardy because of the variance between the complaint and the proof. The minor discrepancy which he points to was not so material as to necessitate reversal.

Finally, Beacham claims that two sets of comments during the prosecutor's closing argument prejudiced his chances of receiving a fair trial. Although he contends that the prosecutor was improperly alluding to an unsubstantiated fact when he said that Beacham had been suspended several times from the Chicago police force, Beacham himself admitted on the witness stand that he had previously been suspended and reprimanded. And, while Beacham correctly points out that the prosecutor was mistaken in telling the jurors that Gregory Beacham testified his cousin, the defendant, was wearing a hat after the shooting,

this misstatement was harmless error. It was not significant enough to cause an objection by defense counsel or to be commented upon by defense counsel in his closing remarks.

Judgment affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.