Charles W. EDWARDS, Appellant
(Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

No. 4834.

Supreme Court of Wyoming.

May 8, 1978.

David B. Park, Ronald W. Hofer and Harry E. Leimback, Casper, signed the brief and David B. Park appeared in oral argument on behalf of appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Allen C. Johnson, Asst. Atty. Gen., Cheyenne, signed the brief and Allen C. Johnson, Cheyenne, appeared in oral argument on behalf of appellee.

Before GUTHRIE, C. J., and McCLIN-TOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

Appellant-defendant was found guilty by a jury in district court of perjury in violation of § 6–153.1, W.S.1957, 1975 Cum.Supp. [§ 6–8–101, W.S.1977],[1] and sentenced to a penitentiary term of not less than 18 months nor more than two years. On appeal, defendant raises five issues:

1. Whether the State successfully proved all elements of the crime of perjury;

2. Whether the trial judge erred in not removing the matter to juvenile court;

3. Whether the trial judge exhibited an open bias so that the jury was improperly influenced;

4. Whether the transcript of the trial in which the perjury allegedly occurred was improperly admitted into evidence;

5. Whether undue attention was drawn to the allegedly perjurious testimony of defendant.

We shall affirm.

Pursuant to subpoena, defendant testified for the defense in the trial of *State v. Russell, et al.*, Criminal Action No. 7177, Natrona County District Court. That trial resulted in the conviction of Thomas Russell, Jr. on charges of receiving stolen property. When defendant appeared at the courthouse in Casper to testify on the second day of the Russell trial, he was summoned by Officer Millay of the Casper Police Department to a conference with Officer Millay and Deputy County Attorney Lewis. After defendant had related the statement that he was going to make in court (that the expensive racing manifold with carburetors involved in the trial had been given by him, Edwards, to Russell as collateral on a loan), Lewis indicated his disbelief of such version and threatened defendant with a charge of perjury. Defendant then recanted his statement and related that he had been threatened by Russell and told to testify to the fabricated story. He then left the county attorney's office and upon entering the courthouse hallway was once again threatened by Russell. Subsequently, when called as a witness in the Russell trial, he testified to the story which he previously had told Millay and Lewis was fabricated. At the trial of the perjury charges herein, defendant admitted his prior testimony was not true, but asserted that he had related it out of fear of Russell and others.

██ A charge of perjury requires proof of three elements: (1) the materiality of the perjured evidence upon the issue in the trial in which it was given; (2) that the defendant testified as alleged; and (3) that his testimony (evidence) was knowingly and corruptly false. *Fletcher v. State*, 1912, 20 Wyo. 284, 123 P. 80. As with all criminal charges, each element must be proved beyond a reasonable doubt; yet with a charge of perjury, the quantum of proof necessary is the highest known to law, excepting only treason. *State v. Buchanan*, 1971, 79 Wash.2d 740, 489 P.2d 744. To support a conviction for perjury, the offense must be proved by the testimony of two independent witnesses, or that of one witness and independent corroborating circumstances of

---

1. Section 6–153.1, W.S.1957, 1975 Cum.Supp. [§ 6–8–101, W.S.1977], provides:

"Whoever, being under oath or affirmation lawfully administered, shall willfully, corruptly and falsely testify or make any false affidavit, certificate, declaration, deposition or statement in any judicial, legislative, or administrative proceeding in which an oath or affirmation may be required by law, touching a matter material to the point in question, is guilty of perjury, and shall be imprisoned in the penitentiary not more than fourteen (14) years."

weight equal to the testimony of another witness. 70 C.J.S. Perjury § 68, pp. 535–538; *People v. Mazza*, 1973, 182 Colo. 166, 511 P.2d 885; *State v. Frames*, 1973, 213 Kan. 113, 515 P.2d 751. Though much criticized, this so-called "two-witness" rule is deeply rooted in past centuries, manifesting a policy as said in *United States v. Diggs*, 7 Cir. 1977, 560 F.2d 266, 269, cert. den. 434 U.S. 925, 98 S.Ct. 404, 54 L.Ed.2d 283:

" * * * that a conviction for perjury ought not to rest solely on one man's oath against that of another, and on 'the fear that innocent witnesses might be unduly harassed or convicted in perjury prosecutions if a less stringent rule were adopted.' *Weiler v. United States*, 323 U.S. 606, 609, 65 S.Ct. 548, 550, 89 L.Ed. 495 (1945)."

The jury was properly instructed by the trial judge as to this extra heavy burden of proof placed upon the State.

■ Defendant's initial assertion of error alleges that requisite proof of the required elements of the perjury charge had not been successfully made. He asserts that neither the materiality of the evidence, nor its knowing and corrupt falsity, nor that it was given as alleged under oath had been proven to the standards required. After reviewing the evidence presented in the trial court, we cannot agree. From the full transcript of testimony adduced at the prior trial, admitted after proper authentication by the official court reporter, Annotation, "Mode of proof of testimony given at former examination, hearing, or trial," 11 A.L. R.2d 30, as well as defendant's own testimony at the trial herein, it is clear that the perjured testimony in question was properly attributed to him and material. As for his allegation that the prior testimony was not properly shown to have been under oath, we would simply point out that the court reporter testified that the contents of the transcript were exactly as he had taken them down; and thus, in conjunction with the statement in the transcript that defendant had been duly sworn, constitutes sufficient proof beyond a reasonable doubt that the oath had been given. *People v. Beacham*, 1977, 50 Ill.App.3d 695, 8 Ill.Dec. 499, 365 N.E.2d 737.

■ Concerning the required element of materiality, the defendant has urged that unless the indictment or information from the prior trial, along with the record of that defendant's plea of not guilty in the previous case, are introduced into evidence in the perjury trial at hand, materiality has not been adequately shown, citing as controlling authority *Fletcher v. State*, supra. From our reading of *Fletcher*, such a conclusion is not that clear. To be material, the statement made must have some weight and reference to the determination of an issue before the court. Although its actual effect has no bearing on materiality, the statement must be one which could influence a tribunal, even if only upon a collateral or circumstantially material point. 70 C.J.S. Perjury §§ 11–12, pp. 466–468. In the situation herein, it should be obvious that defendant's perjured statement was more than material. It went to the very crux of the possession of stolen property charge against the defendant Russell, being directed as it was at the key element of Russell's knowledge at the time of the receipt of the property. The testimony of Officer Millay, as well as Deputy County Attorney Lewis, clearly indicated the testimony's materiality, and there would seem to be no need, under circumstances such as this, for the narrow, technical requirement of *Fletcher*, as interpreted and proposed by defendant.

■ We do not read Fletcher as saying the only way materiality may be proven is by introduction into evidence of a copy of the information and proof of a plea of not guilty. The holding, as we view it, states only that there must be proof of a joinder of issue and if the perjured testimony of a witness is material to that issue, the matter is properly before the jury. In *Fletcher*, there was a failure of proof that issue had been joined. In the case now before us, from the record there is no question but that Russell was charged with receiving stolen property and the whole transcript of testimony from the *Russell* case received in

evidence amply, beyond dispute, demonstrates that Russell claimed innocence; the issue of guilt or innocence of the charge was thus drawn and the testimony of defendant here was material to that issue.

■ Finally, within the initial issue in the appeal before us, based on an alleged failure of proof, defendant urges that his prior testimony could not be found willfully and corruptly false since he was testifying out of fear and duress based on threats of physical harm. While we would agree that any threat to a person of physical violence might well engender fear or apprehension, such compulsion cannot excuse perjury in a case such as that before us. The rule is excellently stated in 60 Am.Jur.2d, Perjury, § 49, p. 995:

"A false statement made under fear or compulsion *in court* under oath constitutes perjury, since the impelling danger is not present, imminent, impending, or unavoidable. Such characteristics of duress are not present in testifying *in court* under oath, since the defendant possesses not only the power and right of protecting himself, but may also appeal to the law to shield him from the threatened danger. Accordingly, it has been held, a person is guilty of perjury who deliberately and wilfully makes a false statement under oath, before a grand jury, even though he speaks under compulsion, and it is immaterial whether the witness appears and testifies voluntarily or under compulsion of a subpoena." (Emphasis added. Footnotes omitted.)

In a courtroom, the witness is surrounded by all the protection a court can muster.

See Annotation, "False statement made under fear or compulsion as perjury," 4 A.L.R. 1319.[2]

■ The purpose of the perjury statute with respect to a judicial proceeding is to keep the process of justice free from the contamination of false testimony. It is for the wrong done to the judicial system and the administration of justice that punishment is provided. "Perjury is an obstruction of justice; its perpetration may well affect the dearest concerns of the parties before a tribunal." *United States v. Norris,* 1937, 300 U.S. 564, 574, 57 S.Ct. 535, 539, 81 L.Ed. 808. Without truthful testimony, the court system cannot function. For that reason, a court cannot accept the threats as a compulsion to lie under oath and a court will use all its force to protect the one threatened.

An early Mississippi decision, *Bain v. State,* 1890, 6 Miss. 557, 7 So. 408, 409, best states the problem and the reasoning behind our holding:

" * * * The social system would be subverted, and there would be no protection for persons or property, if the fear of man, needlessly and cravenly entertained, should be held to justify or excuse breaches of the criminal laws of the state, and to excuse or justify the crime of perjury."

■ Defendant's second issue alleges error in the trial judge's refusal to transfer the charge involved to juvenile court for disposition, since at the time of the offense defendant was only 18 years old. Section 14–115.38(c), W.S.1957, 1975 Cum.Supp. [§ 14–8–138(d), W.S.1977].[3] As a reading of

---

**2.** Though the trial judge questioned the materiality of the threats, he nevertheless permitted the defendant to testify. Even if a valid defense, the alleged threats were pretty vague. The defendant's statement to the police as to their extent was as follows:

"Well, the way I took it and everybody told me he was after me. All of his friends that he lives with said Tom's looking for you. You're in trouble. Someone said he was gonna kick my ass. All his friends said that. That I better get over there and talk to him. I ain't gonna fight him. So his friends started telling me things. I'd be in some trouble."

The defendant's testimony at trial was considerably expanded and more colorful as to the range of threats but the jury was not compelled to believe him. As we so often say, the evidence on appeal from a criminal conviction must be viewed in the light most favorable to the State. *Fuller v. State,* Wyo.1977, 568 P.2d 900, ▇▇▇▇▇ Criminal Law, West's Wyoming Digest.

**3.** Now cited as § 14–8–138(d), W.S.1977, the provision reads:

"On the motion of any party or on its own motion, the district court may order that any proceeding commenced therein which is

the relevant statute reveals, such a transfer is discretionary, *Mullin v. State*, Wyo.1973, 505 P.2d 305, 308, cert. den. 414 U.S. 940, 94 S.Ct. 245, 38 L.Ed.2d 166, and defendant has provided us with no evidence that the trial judge abused that discretion. There being no such evidence shown, the refusal of transfer by the trial judge was not error.

█ Issue three raised by defendant contends that two statements made by the district judge during the course of the trial could have improperly influenced the jury, thereby denying defendant his due process rights under the United States and Wyoming Constitutions. Our review of the record having revealed no trial objection to either statement, and there being no claim nor basis for plain error, we are precluded from considering these allegations on appeal. *Hampton v. State*, Wyo.1977, 558 P.2d 504; *Connor v. State*, Wyo.1975, 537 P.2d 715.

█ Defendant's fourth issue concerns the alleged improper admission of the transcription of a tape-recorded statement made by him to police. At trial, defense counsel objected to admission of the transcription based on incompetency, irrelevancy, lack of foundation and that it was not the best evidence. His objection was overruled by the district court, and properly so. The sufficiency of the evidence presented to establish foundation is within the sound discretion of the trial judge. *Webber v. Farmer*, Wyo.1966, 410 P.2d 807; *State v. Cooper*, 1972, 161 Mont. 85, 504 P.2d 978. Here, the trial court was presented with considerable evidence of the accuracy and authenticity of the transcription in question. The police officer who testified as to the foundation of the transcription was present when the recording itself was made, was present at least part of the time when the transcription was made, and then stated his belief that the transcription was

the same or very nearly the same as what defendant had told him, discrepancies occurring because portions of the tape were inaudible. While other courts have held transcriptions of sound recordings to be both admissible as well as inadmissible, inadmissibility has generally occurred because of serious questions of accuracy or reliability. Annotation, "Admissibility in Evidence of Sound Recording as Affected by Hearsay and Best Evidence Rules," 58 A.L.R.3d 598. Here, there has never been any question raised concerning the transcript's accuracy or authenticity, even after the original tape recording was provided to the defense. As for the "best evidence" basis for that objection, that doctrine has generally been limited to writings or documents, and then only when production of the original writing is essential to an accurate determination of the issues involved. McCormick, et al. on Evidence, 2d Ed. HB, § 231, pp. 561–562; *State v. Nano*, 1975, 273 Or. 366, 543 P.2d 660. As McCormick has noted, the name "best evidence" is really a misnomer, and the rule should be more correctly referred to as the "original document" rule. In the situation here, the rule is not applicable.

█ Within his fourth issue, defendant asserts that admission of the transcript was hearsay since its accuracy was not testified to by the person who actually did the transcribing. Once again, counsel has raised a point not presented to the trial court and, therefore, once again, we must decline review. *Hampton v. State*, supra; *Connor v. State*, supra.

█ By way of his fifth and final issue on appeal, defendant avers that the trial court erred in allowing each juror to read his own personal copy of that prior testimony of defendant alleged to be perjurious. He argues that this action drew undue attention to the testimony and, therefore, prejudiced him. We think not. The testi-

within the concurrent jurisdiction of the juvenile court be transferred to the juvenile court when, after notice and hearing, the judge of the district court finds that the matter is more properly suited to disposition under the provisions of this act [§§ 14–8–101 to

14–8–144]. Such an order of transfer shall confer upon the juvenile court full jurisdiction in the matter for all purposes, the same as if the matter had been originally commenced in the juvenile court."

mony of defendant was rather lengthy, and in order to save time while also enabling each juror to give the testimony his unhurried consideration, the trial judge allowed the use of multiple copies, collecting them from the jury members when their reading was concluded. In point of fact, such a procedure should be viewed as more of a precaution to help eliminate the possibility of jury misunderstanding and misinterpretation, rather than a procedure which created prejudice. Under the circumstances of the situation described, we can perceive no error. There is no reason to keep a jury in the dark by permitting only a fleeting view of the evidence.

Affirmed.