2024 IL App (2d) 230541-U
No. 2-23-0541
Order filed July 25, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CM-1550 |
| NORMAN C. COLE, | ) ) ) | Honorable George T. Pappas, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The evidence was sufficient to convict defendant of violating an order of protection by phoning the complainant. Although the State did not produce phone records to establish when the phone call in question was made, we uphold the trial court's finding that the complainant testified credibly that defendant made the call after he was served with the order of protection.

¶ 2    Following a bench trial in the circuit court of Lake County, defendant, Norman C. Cole, was found guilty of violating an order of protection (720 ILCS 5/12-3.4(a)(1)(i) (West 2020)). Defendant argues on appeal that the State failed to prove his guilt beyond a reasonable doubt. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On October 24, 2022, the complaining witness, Keyana Wiley, obtained an emergency order of protection. The order was effective until November 14, 2022, and barred defendant from having any contact or communication with Wiley. In her petition requesting the order, Wiley claimed that she found a tracking device attached to her car and had reason to believe that defendant placed it there. The order was served on defendant at 3:10 p.m. on October 26, 2022.

¶ 5     The information charged defendant with violating the order of protection by contacting Wiley on or about October 26, 2022. The State's theory at trial was that, on October 26, 2022, defendant phoned Wiley, violating the order.

¶ 6     Before summarizing the evidence at the trial, we note that defense counsel remarked during a pretrial proceeding that there were "some issues as far as telephone records not matching up with what is purported to have happened here. I think the State is looking for an opportunity to gather more information about why the telephone records do not match the allegations." The prosecutor acknowledged that defense counsel's remark was accurate.

¶ 7     At trial, Wiley testified that on the evening of October 26, 2022, while driving from Chicago to Zion with her friend Brishna, she received several telephone calls from an unknown number. At 9:20 p.m., she answered one of the calls and recognized defendant's voice. About 5 to 10 seconds after Wiley answered the call, Brishna started recording the call using her cell phone's video camera. Brishna's phone shut off before the call was completed. Wiley testified that the recording missed roughly the final five seconds of the call. Wiley was asked about the content of the call:

        "Q. *** Did the defendant say anything to you?

        A. Yes.

Q. And what did he say during that conversation?

A. He was upset about the order of protection.

Q. And did he say anything else to you?

A. No. I started speaking.

Q. On this phone conversation, both you and [defendant] were speaking back and forth?

A. Yes."

Over objection, the call recording was admitted into evidence and played at trial. On the recording, which lasts for 37 seconds, Wiley is irate and lambastes defendant for placing a tracking device on her car. Defendant says comparatively little and sounds calm. Neither Wiley nor defendant mentions the protective order. Wiley testified that she was "very angry" on the call because defendant "had a tracker on [her] car and [was] watching [her] for two months[.]" Wiley was unsure of the exact date she told the police about the call, but she knew that she did not tell them on the same day as the call.

¶ 8     On cross-examination, Wiley denied calling defendant at 9:50 p.m. on October 26, 2022. She believed that she discovered the tracking device on October 22, 2022. She was upset and called defendant that day. After defendant's October 26, 2022, call, she did not contact the police immediately, but did so after defendant continued to text her. She reiterated that she was unsure of the exact date she contacted the police, but she believed she did so within days, not weeks, of his call. She denied waiting until November 17, 2022, to contact the police. She denied calling defendant at 10:33 p.m. on November 14, 2022.

¶ 9     Defendant testified that he spoke with Wiley "throughout" October 2022—before about October 24. Defendant learned of the order of protection from a U.S. Customs official on October

25, 2022, when he returned from a weeklong trip to the Dominican Republic. Defendant testified that the recording played during the State's case-in-chief was of a call he received before October 24, 2022, while he was in the Dominican Republic. He added, "I woke up to the phone call, and I was getting yelled at, someone screaming at me about a tracking device. So I'm very aware of the conversation. I know *** when that conversation actually took place." Defendant also testified that he received phone calls from Wiley at 10:50 p.m. on October 26, 2022, and at 10:33 p.m. on November 14, 2022. Defendant introduced into evidence screenshots from his phone showing missed calls from Wiley's phone number on those dates and times. Defendant denied calling Wiley on October 26, 2022.

¶ 10    In closing arguments, defense counsel stressed that no phone records or metadata were admitted to establish the date of the phone call that was the basis of the charge. Counsel also noted that the order of protection was not mentioned on the recorded phone call admitted into evidence.

¶ 11    The trial court found defendant guilty. In doing so, the court "found both [Wiley] and [defendant] to be credible." As to Wiley, the court commented that her version of events "made sense" and "wasn't something that was counter to common sense." The court rejected defendant's testimony that the recorded phone call was made before the order of protection was issued. The court elaborated that there would have been "absolutely no reason" to record a phone call "on another day before the order of protection [was issued]."

¶ 12                                    II. ANALYSIS

¶ 13    Defendant challenges the sufficiency of the evidence to sustain his conviction. He disputes neither the issuance of the order of protection nor its proper service on him. Rather, he insists that Wiley's testimony was not credible and the remaining evidence was insufficient to prove beyond a reasonable doubt that he called Wiley after being served with the order of protection.

¶ 14    In reviewing a challenge to the sufficiency of the evidence to support a criminal conviction, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Generally, "a reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of evidence or the credibility of witnesses." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009). The trier of fact's credibility determinations are not sacrosanct, but they will not be disturbed on appeal unless against the manifest weight of the evidence. *People v. Bishop*, 2024 IL App (2d) 230106, ¶ 54, pet. for leave to appeal pending (filed May 1, 2024). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding is unreasonable, arbitrary, or not based on the evidence presented." *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. A witness's testimony cannot support a conviction where, because of serious inconsistencies and repeated impeachment, "no reasonable trier of fact could have found [the] testimony credible." *People v. Smith*, 185 Ill. 2d 532, 545 (1999). "We will reverse a criminal conviction only if the evidence was so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Gumila*, 2012 IL App (2d) 110761, ¶ 61.

¶ 15    In arguing that he was not proved guilty beyond a reasonable doubt of violating the order of protection, defendant notes that the State failed to introduce phone records into evidence to corroborate either Wiley's testimony that defendant called her after he was served with the order of protection or her testimony that he continued to text her after the phone call. Defendant similarly notes that the State neither called Wiley's friend Brishna to testify nor introduced metadata for the

recording from Brishna's phone to confirm when the recording was made. The argument is unpersuasive.

¶ 16 If evidence of guilt is sufficient to sustain a conviction, the State's failure to introduce additional evidence is not grounds for reversing the conviction. See *People v. Beacham*, 50 Ill. App. 3d 695, 700 (1977) ("The State is not required to present every witness to a crime or every possible expert witness who might testify to some facet of a crime, and it need not seek out and disprove every possible alternative explanation of a crime before an accused can be found guilty."). It is firmly established that " '[t]he testimony of a single witness, if it is positive and the witness credible[,] is sufficient to convict even though it is contradicted by the accused.' " *People v. Myles*, 2020 IL App (4th) 180652, ¶ 47 (quoting *People v. Hampton*, 44 Ill. 2d 41, 45 (1969)). In his reply brief, defendant argues that Wiley was not a credible witness, so this principle does not apply. However, "it is the function of the trier of fact to weigh the credibility of witnesses." *Id.* Here, the trial court specifically found Wiley to be credible. The relevant question is whether that finding was against the manifest weight of the evidence. It was not.

¶ 17 Defendant claims that Wiley lied repeatedly during her testimony. He notes that, although she denied calling him at 9:50 p.m. on October 26, 2022, or at 10:33 p.m. on November 14, 2022, screenshots from defendant's phone show calls from Wiley's phone number on those dates and times. However, the screenshots show the calls as "missed" calls. The fact that the calls were made from Wiley's phone is not conclusive proof that she made the calls, let alone that she did so intentionally. Even if she knowingly made the calls, she might have forgotten making them. And even if she had lied about the calls, the trial court was not required to reject her testimony in its entirety, particularly since neither the calls nor her denials had a *substantive* bearing on defendant's

guilt or innocence. See *People v. Porter*, 277 Ill. App. 3d 194, 200 (1995) ("[T]he trier-of-fact is free to accept or reject as much or as little as it sees fit of a witness'[s] testimony.")

¶ 18    Defendant also contends that Wiley lied about when she reported to the police that defendant violated the order of protection. According to defendant, although Wiley testified that she believed that she reported the violation within a matter of days, it actually took her nearly a month to do so. Defendant references the portion of Wiley's testimony in which she was asked whether she waited until November 17, 2022, to contact the police. Contrary to defendant's representation, Wiley denied that she waited until November 17, 2022. Wiley's testimony that she waited days, not weeks, to contact the police was uncontradicted and unimpeached.

¶ 19    Defendant further argues that the content of the recorded phone call supports his testimony that the call occurred before he was served with the order of protection. It is undisputed that Wiley spoke with defendant by telephone after discovering the tracking device but before obtaining an order of protection. Defendant contends that *this* call was the recorded call played in court. According to defendant, if the conversation indeed took place after the order of protection was issued, "logic would dictate that [Wiley] would be angry about [defendant] contacting her, not exclusively about the purported tracking device." Defendant notes that Wiley, not he, sounded upset during the call. He also notes that, although Wiley testified that defendant called her because he was upset about the order of protection, the order was not mentioned during the recorded call.

¶ 20    We are not persuaded. Notably, by asserting an unsupported "logic would dictate" characterization of the conversation's subject matter, the defendant asks us to draw inferences contrary to the trial court's findings. Yet the decision of what inferences to draw from the evidence belonged to the trial court as trier of fact. The court's inferences were reasonable. The recorded portion of the telephone conversation was 37 seconds long. Wiley testified that Brishna's recording

began 5 to 10 seconds into the conversation and ended about 5 seconds before the conversation ended. Thus, only roughly 70 to 80 percent of the conversation was recorded. Because the recording was incomplete, it does not refute Wiley's testimony that defendant called to complain about the order of protection.

¶ 21    Defendant also stresses that, before trial, the prosecutor alluded to inconsistencies between the relevant phone records and Wiley's allegations. The prosecutor's comment has no bearing on the sufficiency of the evidence because no evidence of any such discrepancies was presented at trial.

¶ 22    Finally, to establish that the trial court did not hold the State to its burden of proving guilt beyond a reasonable doubt, defendant notes an isolated remark by the court that Wiley's testimony was not "counter to common sense," which defendant interprets as a lower bar than beyond a reasonable doubt. Defendant inaccurately suggests that this was the sole basis upon which the court resolved the conflicting testimony between two credible witnesses. To the contrary, although the court stated that defendant was credible, it concluded that there would have been no reason for Wiley to record a phone call she placed to defendant before she obtained the order of protection.

¶ 23    We cannot say that the evidence was so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt.

¶ 24                                  III. CONCLUSION

¶ 25    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 26    Affirmed.