Tom Lester PUGH, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13764.

Court of Criminal Appeals of Oklahoma.

July 13, 1966.

Thomas Dee Frasier, Tulsa, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error, Lester Tom Pugh, defendant below, was charged in the district court of Tulsa County, Oklahoma with knowingly concealing stolen property. He was tried to a jury, found guilty, and his punishment fixed at two years in the peni-

tentiary, and a $200 fine. Motion for new trial was filed and overruled, and appeal to this Court perfected in due time.

In his motion for new trial and in the petition in error, defendant sets out nine assignments of error; but in his brief argues them under two propositions.

Defendant was prosecuted under Title 21 O.S.A. § 1713, which was amended in 1961. Prior to the amendment the statute read:

"Every person who buys or receives, in any manner, upon any consideration, any personal property of any value whatsoever, that has been stolen from any other, knowing the same to have been stolen, is punishable by imprisonment in the penitentiary not exceeding five years, or in the county jail not exceeding six months, or by a fine not exceeding $250, or by both such fine and imprisonment."

As amended in 1961 (effective July 18, 1961), the statute reads:

"(1) Every person who buys or receives, in any manner, upon any consideration, any personal property of any value whatsoever that has been stolen, embezzled, obtained by false pretense or robbery, knowing or having reasonable cause to believe the same to have been stolen, embezzled, obtained by false pretense, or robbery, or who conceals, withholds, or aids in concealing or withholding such property from the owner, is punishable by imprisonment in the penitentiary not to exceed 5 years, or in the county jail not to exceed 1 year, or by a fine of not to exceed $500, or by both such fine and imprisonment.

"(2) Every person who, without making reasonable inquiry, buys, receives, conceals, withholds, or aids in concealing or withholding any property which has been stolen, embezzled, obtained by false pretense or robbery, or otherwise feloniously obtained, under such circumstances as should cause such person to make reasonable inquiry to ascertain that the person from whom such property was bought or received had the legal right to sell or deliver it shall be presumed to have bought

or received such property knowing it to have been so stolen or wrongfully obtained. This presumption may, however, be rebutted by proof."

The State offered three witnesses: First, Kenneth Mahorney, who testified that he operated a TV Hospital in the city of Tulsa, and handled televisions, radios, record players, etc., for sale. That some time between 9 o'clock on Saturday night, January 30, 1965 and 7:30 the following Sunday morning, his place of business was robbed, and a number of articles taken, including one white Zenith clock radio. He had the serial number of this radio, and identified one introduced in evidence as a radio stolen from his shop on the night in question. He also identified two Zenith television sets taken in the same robbery, by the model numbers.

Dennit Morris, a deputy sheriff of Tulsa County, testified that he had known the defendant approximately 15 years. That defendant had for some time lived in a white frame house at the corner of College and Katy, in the city of Tulsa, and had recently built a new brick home, two blocks south, and had moved into the new place. That on the night of January 30, 1965 (Saturday) he had the white frame house of defendant under surveillance. That about one o'clock Sunday morning he observed two men carrying what appeared to be television sets from a truck into the white frame house, and that he identified one of the men as the defendant. That after unloading the television sets, both men got into the truck and left, going toward the brick house. Witness followed them, and saw the defendant get out of the truck, and observed him as he walked across the well-lighted yard, and go into the house. He testified that defendant had a white radio under his arm as he went from the truck, across the yard and into the house.

The next day the officer secured a search warrant for each of the houses of defendant. The officers making the search found three television sets in a closet in the vacant house; and found the white clock radio at

the head of the bed on a night stand in the bedroom of the brick house. There were two other officers with the witness, and witness testified that Mrs. Lester Pugh, wife of the defendant, and John Pugh, his father, were in the house at the time they made the search.

Carl Bolton, also a deputy sheriff of Tulsa County, testified that he went with Dennit Morris, Glen Irby and Floyd Jordan when they made the search of the two houses, and he identified the radio as the one found in the Pugh home.

This concluded the State's evidence in chief, and when it was completed, counsel for defendant moved for an advised verdict and renewed his demurrer, both of which were overruled, and exceptions saved.

The defendant did not testify, and no evidence was offered in his behalf. He rested his case on the motion for directed verdict, and his demurrer to the evidence.

Defendant's assignments of error are as follows:

"Proposition I. Mere possession of recently stolen property is not sufficient to sustain a conviction on a charge of knowingly receiving stolen property.

"Proposition II. Trial Court committed fundamental error in submitting Instruction No. 3 to the jury."

In support of his first proposition, defendant cites a number of cases holding that it is not necessary that the defendant have actual knowledge that the property was stolen, but it is sufficient if the circumstances accompanying the transaction were such as to make the accused believe the property was stolen. This was certainly the law prior to 1961 and the passage of the amended section concerning receiving stolen property. Defendant in effect questions the validity of section 2 of the statute, as amended.

■ It is a broad and well-settled principle of law that the courts will, whenever a question is raised as to the constitutionality of a statute, start with the presumption that the statute is valid. Doubts as to the constitutionality of statutes will always be resolved in favor of the constitutionality. Where the corpus delicti has been proved, the possession of property recently stolen raises a presumption of guilt, and does not violate the constitutional right of an accused not to be compelled to give evidence against himself, or a statute providing that the failure of an accused to testify shall not create any presumption against him.

■ Defendant contends that Instruction No. 3 constitutes fundamental error. This instruction is in the exact words of the statute and under the universal holdings of this Court did not constitute error.

■ Further, it is well settled that where no exception is taken to an instruction, the same will not be considered by the Court, unless it is fundamental error. The only objection made to any of the instructions was the following: "Mr. Geoppinger: I want to except to the instructions. By the Court: Yes, you may do so."

■ In Bowers v. State, 56 Okl.Cr. 111, 34 P.2d 292, we said:

"General exceptions to instructions of the court to the jury will not be considered on appeal. When counsel desire to except to any instruction, the attention of the court should be directly called to the instruction objected to in order that the court may be given an opportunity to correct any error it may contain. If this is not done, errors in instructions will be waived, unless they are fundamentally erroneous."

See also Samples v. State, Okl.Cr., 337 P.2d 756, where the defendant objected to "Instruction No. 1 to 9, both inclusive." We are of the opinion that defendant's Proposition II is without merit.

■ Carefully considering the whole testimony and the facts surrounding the same in this case, we have no doubt of its sufficiency to justify the verdict; and finding no error in the record that would warrant this court in disturbing the verdict, the judgment appealed from is affirmed.

BUSSEY, P. J., and NIX, J., concur.