POINDEXTER *v.* STATE OF INDIANA.

[No. 769S166. Filed December 21, 1970. Rehearing denied March 3, 1971.]

*Isadore D. Rosenfeld,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was found guilty of first degree burglary by a jury and was sentenced to the Indiana State Prison for not less than ten nor more than twenty years. Appellant's

sole assignment of error is that there was insufficient evidence to sustain the verdict and, therefore, the verdict was contrary to law.

The record in this case discloses the following:

On the night of October 29, 1968, Mary Ann Trensey heard a scratching noise outside the screen door of her upstairs apartment. As she looked into her kitchen she saw broken glass on the floor and a shadow of a man in the doorway. She returned to her bedroom and turned on the light thinking that would frighten him away. However, he continued breaking into her apartment. She then started screaming and kicking on the floor. When the intruder continued to force entry into her apartment she ran to the telephone. The intruder forced his way in, ran to Mrs. Trensey and jerked the telephone cord from the wall. She testified that he was holding a long knife in his hand; that he was wearing dark clothing and had what appeared to be a beany or some sort of hat with a tassel. She testified that he was negro, was wearing gloves, that his complexion appeared to be light, but that his face looked "blurry." He was wearing something on his head. "I figured that it was a beany, but I couldn't be sure." The intruder asked for money and for her purse, but as she continued screaming he suddenly ran out of the apartment and down the back stairway.

Mrs. Trensey's sister, Susan McKinney, who was also in the apartment at the time, had observed the intruder as he broke through the door.

Cecil Foster testified that he lived in the apartment immediately below the Trensey apartment; that he was awakened by a woman screaming and thumping on the floor upstairs. He picked up his flashlight and started through the kitchen to the backdoor, when he heard quick footsteps on the stairway outside. He turned his flashlight on the man and watched him run the full length of the yard. He stated the man was dressed in dark clothing, was of medium height and a trim build. He

was wearing something on his head that appeared to have a tassel on top. The whole head had a rather dull appearance.

Woodrow Miller, a police officer for the City of South Bend, testified that he responded to a call to the Trensey apartment. When he arrived he talked to other officers who were also there and to Mrs. Trensey. After receiving a description of the intruder he left and drove his patrol car down an east and west alley in the neighborhood. As he drove with his lights off he saw a shadow behind a white garage. He turned on his headlights and saw the appellant, who was dressed in dark clothing, was wearing a pair of gloves and had a ladies' silk stocking on his head. As the officer got out of his car the appellant walked up to him and asked him for a match. The officer immediately required the appellant to place his hands on top of the squad car. He stated that the nylon stocking had been pulled down over the appellant's head and had been pushed back up so that it did not cover his face, but covered his head right over the eyebrows. An immediate search of the scene disclosed a butcher knife laying on the ground three or four feet from where the appellant was standing when first seen by the officer.

On the way back to the apartment the appellant was riding in one police car which was being followed by another. The officer in the rear car observed the appellant throw something from the first car. He immediately stopped and picked up the object which he found to be a woman's nylon stocking.

The appellant was immediately returned to the Trensey apartment. At the apartment he was observed by Mrs. Trensey, her sister and Mr. Foster.

Mrs. Trensey testified that when she first saw the appellant he was seated in the police car, and she stated that she could not identify him and informed the officers she would like to see him standing, whereupon the officers required the appellant to get out of the car. Mrs. Trensey stated that he was the size of the intruder and fit the description except she did not recognize the shirt he was wearing. Whereupon the police

officers obtained appellant's coat from the rear seat of the police car and required him to put it on. Again Mrs. Trensey stated that this looked like the intruder except the intruder was wearing something on his head. The police officer then took the nylon stocking which appellant had thrown from the car from his pocket and asked Mrs. Trensey if this could be the object he was wearing on his head. She replied, "Yes, that is what he had on, . . ." Both Mrs. Trensey and her sister identified the appellant as the intruder.

The appellant claims there is insufficiency of evidence and in support of his argument cites the case of *Gaddis* v. *State* (1969), 253 Ind. 73, 19 Ind. Dec. 74, 251 N. E. 2d 658, in which this Court held that all essential allegations must be proven beyond a reasonable doubt; that this evidence must be substantial, not seeming or imaginary; that mere suspicion of guilt or opportunity to commit the crime is insufficient to support the conviction. We believe, however, that the evidence in the case at bar goes far beyond suspicion of guilt. This Court is well aware that often personal identification of a suspect requires the closest scrutiny by the trier of fact. The record in this case discloses that Mrs. Trensey was not hasty in her identification of the appellant; she would not identify him until she could observe his height and build, and it was not until the police officers required the appellant to put his coat back on that Mrs. Trensey and her sister were satisfied that he was in fact the intruder. This was certainly evidence from which the trier of fact could reasonably determine that the identification of the appellant was accurate.

The jury was also justified in taking into consideration the fact as testified to by the police officers that the appellant was wearing a nylon stocking on his head at the time he was arrested. That while he was being transported to the scene of the alleged crime he removed the stocking from his head and threw it out the window; had it not been for the alert action of a police officer who was following the car in which appellant was riding, the stocking would not have been re-

covered. This action by the appellant could be considered by the jury as evidence of his guilt. *Reno* v. *State* (1967), 248 Ind. 334, 11 Ind. Dec. 43, 228 N. E. 2d 14.

Appellant claims in his brief that there is no evidence as to whether he was still wearing the stocking on his head when he was brought back for identification by the witnesses. We would call appellant's attention to the following questions and answers from the testimony of Mary Ann Trensey:

"A  I wanted to see him when he was standing up to judge by that and like I said I couldn't see his face distinctly because it was blurry, and that is why I wanted him to stand up.

"Q  Was this man wearing gloves?

"A  At the time that he was in my apartment?

"Q  When he was returned?

"A  No.

"Q  Was he wearing anything on his head?

"A  No."

The jury was justified in finding from the above testimony that the appellant was not wearing the stocking cap at the time he was brought back for identification, and that the existence of the stocking cap aided the witnesses in making their identification. We find that the jury was justified in finding that the appellant was guilty of first degree burglary beyond a reasonable doubt.

We, therefore, find that the jury's verdict was sustained by sufficient evidence and was not contrary to law. The trial court is, therefore, affirmed.

Hunter, C.J., Arterburn and DeBruler, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 264 N. E. 2d 605.