**Dale Lee HEBERLING, Appellant
(Defendant below),**

v.

**STATE of Wyoming, Appellee
(Plaintiff below).**

No. 4135.

Supreme Court of Wyoming.

March 9, 1973.

Rehearing Denied March 29, 1973.

Richard S. Dumbrill, Newcastle, for appellant.

Clarence A. Brimmer, Atty. Gen., Jerome F. Statkus, Sp. Asst. Atty. Gen., Cheyenne, Thomas L. Whitley, County and Pros. Atty., Newcastle, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

The defendant was charged with the felonious crime of burglary in violation of § 6–129, W.S.1957. The jury returned its verdict in which it found him guilty as charged. The district court entered judgment and sentence in which the defendant was sentenced to the Wyoming State Penitentiary for a term of not less than one year and not more than two years, and, in addition, pay a fine of $250, which sentence to the penitentiary was suspended upon certain conditions and he was placed on probation. The defendant appealed from the judgment and sentence.

The burglary was alleged to have taken place in the early morning hours of February 5, 1972, and consisted of unlawfully, willfully and feloniously entering into a building belonging to Leonard Shuck, located one mile west of Newcastle in Weston County, Wyoming, without the consent of any person in lawful possession thereof, with intent to steal and commit a felony. The defendant was arrested and taken before a justice of the peace on March 13, 1972. He requested that an attorney be appointed to represent him, and Richard S. Dumbrill was so appointed. The preliminary hearing was had on March 20, 1972, and, as a result thereof, the defendant was bound over to the district court. Trial by jury was had on April 13, 1972, which resulted in the verdict and subsequent sentence. The defendant listed six points upon which he relied for reversal. Each of his points will be separately discussed, together with the detailed facts surrounding each contention.

On March 9, 1972, the State's principal witness, Stanley Wooten, pleaded guilty to the same crime of burglary as charged to the defendant. At the time of the crime Wooten was 30 years of age and had known the defendant for about four years. They were close acquaintances, spent a great deal of time together, and saw each other almost every day. As one of the witnesses put it, " * * * every time I saw one the other was with him." Wooten picked the defendant up about 7 p. m. on the evening before the burglary, which oc-

curred in the early hours of the following morning. They were together until at least 2:30 a. m. Around 9 p. m. they stopped at the Sioux Cafe and Service Station where Wooten borrowed a pair of pliers from the station attendant. Wooten testified that he and the defendant used the pliers to gain entrance to the building where the burglary occurred and to remove certain gauges from welding equipment. The defendant acknowledged he was with Wooten when he borrowed the pliers but testified that Wooten told him he needed the pliers to repair some plumbing. According to the defendant he did not go to the place of the burglary, and between 2 and 3 a. m. he and Wooten went to the defendant's wife's home where he went to bed and slept until 11:30 a. m. He testified that Wooten slept on the couch. It was apparently his contention that Wooten left the house without his knowledge, committed the burglary and returned to the house. Wooten testified the defendant accompanied him and participated in the burglary. In any event, about noon on February 5, Wooten and the defendant left in Wooten's car and eventually went to the home of Buzz Farnsworth. Wooten wanted to sell the stolen tools and equipment, which he had in his car. He asked Farnsworth to pay him $75 for the tools but Farnsworth would only pay $65. The defendant heard this conversation and testified that Wooten asked him what he thought about the price, but he said he did not respond. Wooten sold the tools to Farnsworth for $65, and, according to Wooten, he gave the defendant $30 of the proceeds of the sale. The defendant maintained that Wooten only gave him $10 which was repayment of a loan made by him to Wooten.

On the day Wooten pleaded guilty, and while awaiting a presentence investigation report, he gave a written statement to the undersheriff of Weston County in which he said the defendant had participated with him in the burglary. A copy of this written statement was introduced into evidence by the defendant at his trial. The defend-

ant raised three points which centered about this witness. They were, (1) and (2) that the trial court placed erroneous limitations on the right to cross-examine the alleged accomplice Wooten as to his previous felony convictions and his motives for implicating the defendant, and (3) that the trial court erred in the instruction given to the jury regarding accomplice testimony.

 Defendant argued that the court erred in not permitting him to question the witness Wooten as to the number and nature of his previous felony convictions and his motive for implicating the defendant. Wyoming has long adhered to the rule that it is proper to ask a witness whether or not he had been previously convicted of a felony or felonies for the purpose of testing his credibility. Kennedy v. State, Wyo., 470 P.2d 372, reh. den. 474 P.2d 127, cert. den. 401 U.S. 939, 91 S.Ct. 933, 28 L. Ed.2d 218; State v. Hines, 79 Wyo. 65, 331 P.2d 605, cert. den. 366 U.S. 972, 81 S. Ct. 1938, 6 L.Ed.2d 1261; State v. Velsir, 61 Wyo. 476, 159 P.2d 371, 161 A.L.R. 220; Eads v. State, 17 Wyo. 490, 101 P. 946. The defendant should have been permitted to question the witness as to the number and nature of his previous felony convictions, and the trial court erred in not allowing the defendant to so inquire. Wooten was asked by the prosecution if he had ever been convicted of a felony and he replied that he had and cited the burglary here in question. Upon cross-examination he was asked if he had been convicted of any other felonies and he replied "Yes." He was then asked when he was " * * * first convicted of a felony and what it was for?" to which question objection was made by the State and sustained by the court. The witness was then asked how many times he had been convicted of a felony, including the conviction for the burglary in question. Again objection was made and sustained. The trial court should have permitted the defendant to pursue this line of questioning. The defendant should have made an offer of proof because it is impossible for a review-

ing court to determine whether the exclusion was prejudicial error since the significance of the excluded evidence is not apparent. Here there is no way to determine if the witness had been convicted of more than two felonies. However, as the matter developed the exclusion or its significance was not of major importance as will be discussed later herein. The defendant also argued that he was not permitted to fully question the witness as to his motives for implicating the defendant. The previous felony question and the motive question are related in that they both go to the credibility of the witness. The defendant on cross-examination did a most thorough job of exploring the witness' motives, and the witness' credibility was put in serious doubt. The witness admitted that he had lied to the man to whom he sold the stolen merchandise when he assured the buyer, who was a friend of his, that the goods were not stolen. He admitted that he would tell a lie to keep out of jail, and he would lie if he thought he could get away with it. He also acknowledged that he hoped for a lesser sentence because of his testimony for the State and against the defendant. The defendant showed that this witness had been convicted of two previous felonies, that he would lie if it suited his purpose, and that he hoped for a lesser sentence because of his testimony against the defendant. It is hard to imagine how any witness could have been more discredited. Because the record is replete with derogatory information about the witness it is highly doubtful that any showing of other felony convictions if there were any, or their nature, could have more seriously undermined the witness' credibility. Any error on the part of the trial court in this regard was not shown to be prejudicial.

 The defendant contended the trial court erred when it allowed the witness, Doran Newlin, to express his opinion that the person in the car with the alleged accomplice, Wooten, was the defendant. This witness worked at the Sioux Service Station from which Wooten had earlier borrowed the pliers, and he was on duty when Wooten returned the pliers sometime after midnight. He was in the back part of the shop when Wooten returned the pliers, and he saw Wooten get into his car and saw one other person in the car in the front seat on the passenger side. He testified he had the impression that the other man in the front seat was the defendant. He admitted he could not say for sure that the other person was the defendant because he just glanced at the car as it was pulling away and his view was not very clear. The defendant on cross-examination brought out that this witness at the preliminary hearing testified he could not identify the other man in the front seat. He further testified on cross-examination that he could not be sure who the man with Wooten was. The defendant testified he was with Wooten most of the evening and they may have been at the Sioux Cafe on more than one occasion during the course of the evening. In any event, this witness' identification was shown by the defendant to be very questionable, and it would therefore be a proper subject for discussion to the jury during closing argument. The defendant recalled this witness and asked essentially the same question to which he had previously objected, that is, "You had an impression at the time you saw that person in that automobile and your impression at that time was that it was Dale Heberling, is that what you were saying to the Court and to me?" to which the witness replied "Yes." While it would have been proper for the trial court to have granted the defendant's motion to strike this witness' testimony, we fail to see how such testimony could have been prejudicial to the defendant. While we do not agree with the State that the testimony was properly retained because it went to the weight of the evidence and not the admissibility, we find no prejudicial error. When the trial court overruled the defendant's motion to strike, the defendant moved for a mistrial and argued here that the trial court should have granted his motion. If there was no prejudicial error in the trial court's refusal to strike the testimony,

there can be none in refusing to grant a mistrial on the same grounds.

■ The defendant objected to the accomplice instruction given by the trial court and argued that it was error to have given such instruction and in refusing the defendant's offered instruction. The objection made to the instruction was that it failed " * * * to properly instruct the jury as to the method in which they should view the testimony of the alleged accomplice witness, * * * " and that it did not properly state the law in regard to the testimony of an accomplice. The objection did not distinctly state the matter to which objection was made and the grounds for the objection as required by Rule 51, W.R.C.P. As has been said many times, the purpose of this rule is to aid the trial court in the giving of proper instructions by pointing out with specificity wherein a proposed instruction is erroneous. The voicing of general objections is tantamount to no objection at all. We have, of course, examined the instruction for fundamental error and find none. The defendant offered an instruction which commenced with this sentence: "You are instructed that the witness, Stanley Wooten, is in law what is known as an 'accomplice.'" The trial court was correct in refusing this instruction, even though it was offered by the defendant, because it contains an implication of the very thing that was condemned in Filbert v. State, Wyo., 436 P.2d 959. Although the proffered instruction does not say that the witness was an accomplice of the defendant, it assumes that someone in addition to the defendant participated in the burglary. The witness may or may not have had someone participate with him in the crime. If he did not have a co-participant he was not an accomplice.

■ For his final argument the defendant contends that the court erred in overruling his motion for acquittal. The defendant recognized that verdicts of acquittal are only directed when in the court's opinion there is no substantial evidence to sustain the material allegations of the information. Opie v. State, Wyo., 389 P.2d 684. Our examination of the record reveals that there was sufficient substantial credible evidence to support the verdict.

We should also like to point out that the defendant was afforded a most vigorous defense by competent counsel, and that he was afforded a fair trial in spite of the commission of non-prejudicial error as previously noted.

The judgment of the trial court is affirmed.