Thomas RUSSELL, Jr., Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4735.

Supreme Court of Wyoming.

July 19, 1978.

Raymond B. Whitaker, Casper, signed brief and James R. McCarty, Casper, appeared in oral argument on behalf of appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Peter J. Mulvaney, Sr. Asst. Atty. Gen., and Helen Murray, Legal Intern, Cheyenne, signed brief and Helen Murray and Gerald Stack appeared in oral argument on behalf of appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

Defendant-appellant was convicted by a Natrona County district court jury of receiving stolen property in violation of § 6–135, W.S.1957, 1975 Cum.Supp. [§ 6–7–304, W.S.1977],[1] and sentenced to a period of not less than one nor more than two years in the Wyoming State Penitentiary. From that conviction and sentence, he has prosecuted this appeal raising three issues: (1) Error in denial of defendant's motion for acquittal at the conclusion of the State's case-in-chief; (2) Error in denial of defendant's motion for acquittal at the conclusion of all evidence; (3) Inadequate evidentiary support for the jury's verdict.

We shall affirm.

On February 5, 1976, under surveillance of the Casper police, defendant sold to one Karl Hoskins for $50.00 an expensive stolen automobile intake manifold with carburetors attached. While driving away, defendant Russell was arrested for receiving stolen property.

At trial, it was established that approximately two weeks prior to the incident herein, Karl Hoskins had in the middle of January, 1976, purchased from one Keith Spencer the car from which the manifold involved had been stolen between December 15, 1975, and about January 20, 1976. A mechanic testified that on about December 15, 1975, he had removed the manifold from the engine during repair work on the motor. It was stolen from the rear seat of the vehicle, where it had been placed pending reinstallation. The car was then parked outside the garage. The theft was discovered when the car was later returned to the garage. It was positively identified as coming from the Spencer vehicle. At the time of the sale, Spencer told Hoskins that the manifold, worth about $900.00, had been stolen and that if Hoskins could get it back, he could have it. Subsequently, Charlie Edwards, an acquaintance of defendant's, informed Hoskins that defendant had the manifold from the car and then informed defendant to get in touch with Hoskins. At noon on the day before the sale took place, defendant went to see Hoskins at work and a purchase price of $50.00 was agreed upon. After defendant left, Hoskins notified Casper police of the impending sale and purchase, fearing trouble for receiving "hot" items. In addition to knowing it had been stolen, this suspicion also arose out of the contact by Edwards who told him the defendant had the manifold. (Developed by the defendant as a result of his counsel's cross-examination of Hoskins.) The Casper police then supplied Hoskins with $50.00 in marked money to pay for the manifold and on the evening of the sale, February 5, 1976, placed under surveillance the gas station where the transaction was to occur.

Defendant and his father arrived at the station at approximately 7:00 p. m., defendant going inside to inform Hoskins that he had the manifold in the trunk of his car. Hoskins accompanied defendant outside as the latter told him that the manifold he was purchasing had come off the Spencer car. The sale was completed, Hoskins paid the defendant $50.00, took the manifold inside the station, and defendant and his father drove off. They were subsequently stopped and searched by a police officer, notified by the police officer who had witnessed the transaction, but no money was found. After defendant and his father had been taken to jail, and their car towed away, a Casper police officer, with the aid of a high-intensity lamp, located the marked money in the snow in an area that had been covered by defendant's car prior to its being towed. Indictments were subsequently returned against both defendant and his father.

1. Section 6–135, W.S.1957, 1975 Cum.Supp., in effect at the time of the offense charged, provided:

"Whoever buys, receives, conceals or aids in the concealment of anything of value, which has been stolen, embezzled or obtained by false pretense, knowing the same to have been stolen, embezzled or obtained by false pretense, shall, if the goods are of the value of one hundred dollars ($100.00) or upwards, suffer the punishment prescribed for grand larceny, and if the goods are worth less than one hundred dollars ($100.00), shall suffer the punishment prescribed for petit larceny."

At trial, defendant testified that he knew the manifold was worth at least a couple hundred dollars, and that he had gotten it from Charlie Edwards in November, 1975, as collateral for a loan, but denied knowing that it was stolen. Charlie Edwards also testified as to the loan arrangement between himself and defendant, and further stated that he had given defendant permission to sell the manifold to Hoskins in order to extinguish his debt.[2] Following the close of all evidence, a defense motion for acquittal of Thomas Russell, Sr. was granted. Defendant was subsequently found guilty by the jury of receiving stolen property with a value in excess of $100.00. Other facts will be mentioned as appropriate during the course of this opinion.

By his first issue raised on appeal, defendant asserts that the district court erred in denying his motion for acquittal made at the conclusion of the State's case-in-chief. The material elements, each of which were required to be proved beyond a reasonable doubt to support conviction, were and are: (1) the receipt (2) of a thing of value which has been stolen and (3) knowing it to have been stolen. Section 6–135, supra; *Curran v. State,* 1904, 12 Wyo. 553, 76 P. 577; *Semon v. State,* 1902, 158 Ind. 55, 62 N.E. 625. There can be no question but that the defendant received the stolen manifold, because he had it, negotiated its sale and sold it to Hoskins. It would be quite incongruous to have physical possession of a piece of an automobile without it being received from someone or somewhere. The evidence of the State in its case-in-chief established that the property was stolen from Spencer's car, which fact was stipulated to by defendant. While it is argued to the contrary, there was evidence before the jury at the close of the State's case-in-chief, from which it could reasonably be inferred that the defendant had knowledge that the manifold was stolen,

hereafter summarized following our discussion of the office and function of a motion for acquittal at the close of the State's case to lay down the accepted standards to be considered by the trial judge where such a motion is made.

This court has considered Rule 30(a), W.R.Cr.P., in a few instances, but not exhaustively in the relation with which we are concerned. *Montez v. State,* Wyo.1974, 527 P.2d 1330, reh. den.; *Heberling v. State,* Wyo.1973, 507 P.2d 1, reh. den., cert. den. 414 U.S. 1022, 94 S.Ct. 444, 38 L.Ed.2d 313. Rule 30(a), W.R.Cr.P.,[3] provides as follows:

"Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the State is not granted, the defendant may offer evidence without having reserved the right."

Wright, in 2 Federal Practice and Procedure, § 462, p. 245, states that such a motion at the end of the government's case implements "'the requirement that the prosecution must establish a *prima facie* case by its own evidence before the defendant may be put to his defense.'" (Emphasis added.) *State v. Allen,* N.D.1975, 237 N.W.2d 154, 156; *Cephus v. United States,* 1963, 117 U.S.App.D.C. 15, 324 F.2d 893, 897.

The standard for the trial judge to use in ruling upon a motion for judgment of acquittal pursuant to the rule has been enunciated in several cases. In *United States v. May,* C.A.8 1969, 419 F.2d 553, 555, reh. den., citing *United States v. McIntyre,*

**2.** Edwards was subsequently charged, tried, convicted and his conviction affirmed for giving perjured testimony in the case now under consideration. He had, in fact, not put the manifold up for collateral but so testified at the request of the defendant here. *Edwards v.*

*State,* Wyo., 577 P.2d 1380. The fabrication of the story was fully developed during the trial of the case now before us.

**3.** Same as Rule 29(a), F.R.Cr.P.

C.A.8 1972, 467 F.2d 274, 276, cert. den. 410 U.S. 911, 93 S.Ct. 972, 35 L.Ed.2d 274, it was said:

"* * * A reviewing court may only direct a motion for acquittal on the sufficiency of the evidence when (1) it may be said as a matter of law that there exists no evidence of guilt whatsoever upon the record or (2) where there exists no substantial evidence from which reasonable men may say that the defendant is guilty beyond a reasonable doubt. * * *"

In *United States v. Bethea,* 1971, 143 U.S.App.D.C. 68, 70, 442 F.2d 790, 792, it was declared:

"In this jurisdiction, '[a] motion for acquittal must be granted when the evidence, viewed in the light most favorable to the Government, is such that a reasonable juror *must* have a reasonable doubt as to the existence of any of the essential elements of the crime.' [Citations omitted.] If the evidence is such that a reasonable man may have a reasonable doubt as to the defendant's guilt, the case should go to the jury. [Citations omitted.] On the other hand, the trial judge should not allow the case to go to the jury if the evidence is such as to permit the jury to merely conjecture or to speculate as to defendant's guilt." (Emphasis in original.)

■ A motion for judgment of acquittal enjoins the trial judge in passing on a motion for acquittal to

"* * * determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter." *Curley v. United States,* 1947, 81 U.S. App.D.C. 389, 392, 160 F.2d 229, 232–233, cert. den. 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850, reh. den. 331 U.S. 869, 67 S.Ct. 1729, 91 L.Ed. 1872.

"* * * For this purpose, [ruling on a motion for acquittal] the judge must 'assume the truth of the Government's evidence and give the Government the benefit of all legitimate inferences to be drawn therefrom.' If the evidence, so measured at the point in the prosecution to which the motion is properly addressed, portends to establish guilt beyond a reasonable doubt, it is for the jury to make the decision as to whether it actually does." (Footnotes omitted.) *Powell v. United States,* 1969, 135 U.S. App.D.C. 254, 257, 418 F.2d 470, 473. The trial judge must determine whether, "[v]iewing cumulatively the totality of the evidentiary items touching on the issue, the jury could reasonably have inferred * * *" guilt. See generally 8A Moore's Federal Practice—Criminal Rules, ¶ 29.06, pp. 29–24 to 29–36.

■ Applying the standards of that cluster of cases to the motion for acquittal at the end of the State's case, we cannot say that, as a matter of law, no evidence of guilt exists nor can we say there is an absence of substantial evidence from which reasonable men may find the defendant guilty beyond a reasonable doubt. We must view the State's evidence in the light most favorable to it. In that aspect, we cannot say that the jury must have a reasonable doubt of any essential element of the crime nor do we see that the jury would be left to speculate, particularly in the setting of the approved justifiable inference that possession of the fruits of the crime, shortly after its commission, is guilty possession or knowledge, along with other justifiable inferences from the evidence we will cover. No question can be raised by the trial judge, nor can we, as to credibility and weight of the evidence before us. It is for the jury at that point to determine whether the evidence actually does or does

not establish guilt beyond a reasonable doubt. *Fresquez v. State,* Wyo.1971, 492 P.2d 197; *Montez v. State,* supra. See also *State v. Rocker,* 1970, 52 Haw. 336, 475 P.2d 684; *State v. Ames,* 1977, 222 Kan. 88, 563 P.2d 1034. It is not the province of the court to make a final determination of reasonable doubt, or its absence. *Opie v. State,* Wyo.1964, 389 P.2d 684.

■ We have just mentioned the inference arising from possession of recently stolen property. That must be explained. Proof of possession of recently stolen goods alone is damning evidence of guilt. In *Rugendorf v. United States,* 1964, 376 U.S. 528, 536–537, 84 S.Ct. 825, 830, 11 L.Ed.2d 887, reh. den. 377 U.S. 940, 84 S.Ct. 1330, 12 L.Ed.2d 303, the Supreme Court of the United States pursuant to a United States statute[4] similar to that of Wyoming, summed up its quality as follows:

"As early as 1896 this Court dealt with such situations. In *Wilson v. United States,* 162 U.S. 613 [16 S.Ct. 895, 40 L.Ed. 1090], Chief Justice Fuller held for a unanimous Court that '[p]ossession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only *prima facie* evidence of guilt, *may be of controlling weight,* unless explained by the circumstances or accounted for in some way consistent with innocence.' * * * " (Emphasis and bracketed citations added.)

There, as here, it was stipulated that property found in the possession of the defendant was stolen. The Court of *Rugendorf* concluded rather simply, in affirming the conviction that, "In any event a prima facie case was made out by the stipulation and the presence of furs in petitioner's home. We cannot say that this was insufficient."

■ That is the traditional common-law rule widely accepted. *State v. Hous-* *ton,* Iowa, 1973, 211 N.W.2d 598; *People v. Colon,* 1971, 28 N.Y.2d 1, 318 N.Y.S.2d 929, 267 N.E.2d 577, cert. den. 402 U.S. 905, 91 S.Ct. 1379, 28 L.Ed.2d 646; *Anglin v. State,* 1967, 1 Md.App. 85, 227 A.2d 364, cert. den.; *State v. Veach,* 1970, 224 Tenn. 412, 456 S.W.2d 650, cert. den. 400 U.S. 948, 91 S.Ct. 256, 27 L.Ed.2d 254, reh. den. 400 U.S. 1025, 91 S.Ct. 584, 27 L.Ed.2d 638; *Ellis v. State,* 1965, 43 Ala.App. 157, 182 So.2d 910, reh. den., cert. den. 279 Ala. 687, 182 So.2d 913; *Combs v. Commonwealth,* Ky.1960, 341 S.W.2d 774, reh. den. When the State introduces evidence on its case-in-chief from which the jury may properly infer the essential elements of the crime, the State has then made out a "prima facie case," impregnable against a motion for acquittal. *People v. Martinez,* Colo.1976, 553 P.2d 774; *People v. Chavez,* 1973, 182 Colo. 216, 511 P.2d 883. To deny a motion to acquit, there must be sufficient evidence to support a prima facie case. *State v. Laurie,* 1976, 56 Haw. 664, 548 P.2d 271; *Holliday v. State,* 1970, 254 Ind. 85, 257 N.E.2d 679. In *Pugh v. State,* Okl.Crim.1966, 416 P.2d 637, the defendant was charged with receiving stolen goods. At the end of the State's case, the defendant moved for a directed verdict and rested. He was found guilty. The court said that where it has been proven that goods were stolen, the possession of recently stolen property raises a presumption of guilt, and does not violate the constitutional right of an accused not to be compelled to give evidence against himself, or a statute providing that the failure of an accused to testify shall not create any presumption against him.

The Supreme Court of the United States has recently confirmed its approval of the inference of guilty knowledge to be gained from unexplained possession of stolen property. In *Barnes v. United States,* 1973, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380, the court discussed this exceptional inference

4. 18 U.S.C., § 2315, provides:

"Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted, or taken; * * *

\* \* \* \* \* \*

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

and its singular position in the criminal law, stating:

"In the present case we deal with a traditional common-law inference deeply rooted in our law. For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods. James Thayer, writing in his Preliminary Treatise on Evidence (1898), cited this inference as the descendant of a presumption 'running through a dozen centuries.'[5] Id. at 327. Early American cases consistently upheld instructions permitting conviction upon such an inference,[6] and the courts of appeals on numerous occasions have approved instructions essentially identical to the instruction given in this case.[7] This longstanding and consistent judicial approval of the instruction, reflecting accumulated common experience, provides strong indication that the instruction comports with due process."

The court then held that the inference clearly satisfies the reasonable doubt standard.

The defendant in *Barnes* argued that the permissible inference of guilt transgresses

upon his right against self-incrimination. The court dispatched that argument in short order:

"* * * The Court has twice rejected this argument, *Turner v. United States,* 396 U.S. [398] at 417–418 [90 S.Ct. 642, 24 L.Ed.2d 610]; *Yee Hem v. United States,* 268 U.S. 178, 185 [45 S.Ct. 470, 472, 69 L.Ed. 904] (1925), and we find no reason to re-examine the issue at length. The trial court specifically instructed the jury that petitioner had a constitutional right not to take the witness stand and that possession could be satisfactorily explained by evidence independent of petitioner's testimony. Introduction of any evidence, direct or circumstantial, tending to implicate the defendant in the alleged crime increases the pressure on him to testify. The mere massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination. *Yee Hem v. United States,* supra, [268 U.S.] at 185, [45 S.Ct., at 72]." (Footnote omitted.)[8]

See also *State v. Arthur,* 1975, 42 Ohio St.2d 67, 325 N.E.2d 888, following *Barnes v. United States,* supra.

**5.** Footnote 5 of *Barnes* is as follows:
"Thayer also described the historical development of the presumption:
" '[T]he laws of Ine [King of Wessex, A.D. 688–725] provide that, "if stolen property be attached with a chapman, and he have not brought it before good witnesses, let him prove . . . that he was neither privy (to the theft) nor thief; or pay as *wite* (fine) xxxvi shillings." To be found thus in the possession of stolen goods was a serious thing; if they were recently stolen, then was one "taken with the mainour,"—a state of things that formerly might involve immediate punishment, without a trial; and, later, a trial without a formal accusation; and, later still, a presumption of guilt which, in the absence of contrary evidence, justified a verdict, and at the present time is vanishing away into the mere judicial recognition of a permissible inference. . . .' Id., at 328. (Citations omitted.)"

**6.** Footnote 6 of *Barnes* is as follows:
"See, e. g., *Wilson v. United States,* 162 U.S. 613 [16 S.Ct. 895, 40 L.Ed. 1090] (1896); *Commonwealth v. Millard,* 1 Mass. 6 (1804); *Knickerbocker v. People,* 43 N.Y. 177 (1870); *State v. Raymond,* 46 Conn. 345 (1878);

*Cook v. State,* 84 Tenn. 461 [1 S.W. 254] (1886)."

**7.** Footnote 7 of *Barnes* is as follows:
"E. g., *United States v. Russo,* 413 F.2d 432 (CA2 1969); *United States v. Smith,* 446 F.2d 200 (CA4 1971); *United States v. Winbush,* 428 F.2d 357 (CA6), cert. denied, 400 U.S. 918 [91 S.Ct. 179, 27 L.Ed.2d 157] (1970); *United States v. Hood,* 422 F.2d 737 (CA7), cert. denied, 400 U.S. 820 [91 S.Ct. 38, 27 L.Ed.2d 48] (1970); *United States v. Dilella,* 354 F.2d 584 (CA7 1965)."

**8.** By footnote 11 to *Barnes,* any problem of shifting the burden to the defendant is explained to be no problem:
"It is true that the practical effect of instructing the jury on the inference arising from unexplained possession of recently stolen property is to shift the burden of going forward with evidence to the defendant. If the Government proves possession and nothing more, this evidence remains unexplained unless the defendant introduces evidence, since ordinarily the Government's evidence will not provide an explanation of his possession consistent with innocence. In *Tot v. United States,* 319 U.S. 463 [63 S.Ct. 1241, 87

■ The instruction given by the trial judge in *Barnes*, approved by that court, so excellently summarizes the law we embrace with respect to the inference surrounding possession of stolen property, we set it out in full as follows:

" 'Possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the *surrounding circumstances* shown by the evidence in the case, that the person in possession knew the property had been stolen.

" 'However, you are never required to make this inference. It is the exclusive province of the jury to determine *whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits the jury to draw from the possession of recently stolen property.*

" 'The term "recently" is a relative term, and has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property, and all the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft the more doubtful becomes the inference which may reasonably be drawn from unexplained possession.

" 'If you should find beyond a reasonable doubt from the evidence in the case that the mail described in the indictment was stolen, and that while recently stolen the contents of said mail here, the four United States Treasury checks, were in the possession of the defendant you would

ordinarily be justified in drawing from those facts the inference that the contents were possessed by the accused with knowledge that it was stolen property, unless such possession is explained by facts and circumstances in this case which are in some way consistent with the defendant's innocence.[9]

" 'In considering whether possession of recently stolen property has been satisfactorily explained, you are reminded that in the exercise of constitutional rights the accused need not take the witness stand and testify.

" 'Possession may be satisfactorily explained through other circumstances, other evidence, independent of any testimony of the accused.' " (Emphasis added.)

■ With the application of common sense and experience, the surrounding circumstances of the defendant's unexplained possession of the manifold in the case before us, based only upon the State's evidence at the end of its case-in-chief, tell us that the defendant must have known or been aware that the manifold was stolen. His possession was recent; the property was stolen sometime between December 15, 1975, and when the car was purchased by Hoskins in the middle of January, 1976. That is recent possession within the circumstances of this case. Whether possession was recent, is a jury question. *State v. Houston,* supra.

■ The State's evidence, through a mechanic, confirmed that the manifold was the one stolen from Spencer's car. Hoskins testified that when the manifold was delivered to him, he was not sure it would fit

L.Ed. 1519] (1943), the Court stated that the burden of going forward may not be freely shifted to the defendant. See also *Leary v. United States,* 395 U.S. 6, 44–45 [89 S.Ct. 1532, 23 L.Ed.2d 57] (1969). *Tot* held, however, that where there is a 'rational connection' between the facts proved and the fact presumed or inferred, it is permissible to shift the burden of going forward to the defendant. Where an inference satisfies the reasonable-doubt standard, as in the present case, there will certainly be a rational connection between the fact presumed or inferred (in this case, knowledge) and the facts the Government must prove in order to shift

the burden of going forward (possession of recently stolen property).

"We do not decide today whether a judge-formulated inference of less antiquity or authority may properly be emphasized by a jury instruction."

**9.** The *Barnes* court specifically held in its footnote 12: "Nor can the instruction 'be fairly understood as a comment on the petitioner's failure to testify.' *United States v. Gainey,* 380 U.S. [63] at 70–71 [85 S.Ct. 754, 13 L.Ed.2d 658]." See also McCormick on Evidence, 2d Ed., § 131, p. 277.

and upon so advising, the defendant replied, "Yeah. It came off Scott Spencer's car." The evidence of the State was that the value of the manifold with the carburetors was between $800.00 to $950.00 and it was sold by the defendant for $50.00, it being paid for with identified city money.[10] On cross-examination of Hoskins, it developed that shortly after Charlie Edwards approached Hoskins and advised he knew the whereabouts of the manifold, the defendant contacted and offered to sell it to Hoskins. A police officer watched the exchange of money between Hoskins and defendant; but, upon arrest immediately thereafter, the money was not on the defendant but later was found on the spot where the car was located at time of arrest, which would place it underneath the vehicle being driven by defendant at time of arrest.[11] Those circumstances established a prima facie case.

We have cited extensively from *Barnes* because it is so expressive and offers so many authoritative answers to the issue before us and upon which there has been much misunderstanding. We must warn, however, that the case does not hold, nor do we, that naked possession of stolen property alone establishes a prima facie case. It is a dominant, powerful, near-conclusive circumstance but needs some other incriminating "surrounding circumstances" to bring it into play, such as those demonstrated as present in this case. The pragmatic statements of *Rugendorf v. United States,* supra, must likewise be used with care; a close examination of that case also reveals some "surrounding circumstances" giving force to its basic tenet. By way of an alert, we have italicized portions of *Barnes* and *Rugendorf,* giving rise to this paragraph urging trial judges and prosecutors to be on guard.

We need not consider any question arising out of a motion for acquittal at the end of the State's case being denied on inadequate grounds and the defendant thereafter in his defense supplying the necessary evidence to fill out a prima facie case not made in the State's case-in-chief. The State made a complete case and we would be hard pressed to hold that it had not, as would have the trial judge, as pointed out in our preceding discussion.

Following the close of all evidence, defendant made a second motion for acquittal, which was also denied. By his second and

---

**10.** An attempt to sell property at a price much less than its value is criminatory evidence of knowledge. *State v. Graham,* Fla.1970, 238 So.2d 618; *State v. Lindsey,* 1970, 81 N.M. 173, 464 P.2d 903, reh. den., cert. den. 1970, 398 U.S. 904, 90 S.Ct. 1692, 26 L.Ed.2d 62; *State v. Butler,* 1969, 9 Ariz.App. 162, 450 P.2d 128; *People v. Malouf,* 1955, 135 Cal.App.2d 697, 287 P.2d 834; *Wertheimer v. State,* 1929, 201 Ind. 572, 169 N.E. 40, 68 A.L.R. 178 (state of origin of the Wyoming Statute); *Gibbs v. State,* 1901, 130 Ala. 101, 30 So. 393; *United States v. Knight,* 1971, 451 F.2d 275, cert. den. 405 U.S. 965, 92 S.Ct. 1171, 31 L.Ed.2d 240.

**11.** Attempts by an accused to conceal or destroy evidence is incriminating evidence. In *State v. Williams,* 1966, 196 Kan. 628, 413 P.2d 1006, reh. den., the defendant, a burglary suspect known to have a pistol, when stopped by the police, surreptitiously threw it under the car. It was not found on the defendant or in the automobile. Another officer went to the scene of the arrest, after the defendant was in custody, and found it in the snow. The court held admission of the pistol into evidence was an incriminating circumstance for consideration by the jury and such demeanor was relevant on the element of criminal knowledge. Secreting suppression of evidence is frequently deemed possessed of a "high degree of potency." *State v. Broadhurst,* 1948, 184 Or. 178, 196 P.2d 407, cert. den. 337 U.S. 906, 69 S.Ct. 1046, 93 L.Ed. 1718. Chewing and swallowing a check by a defendant taken during a robbery was evidence explaining its absence. *Vigil v. People,* 1971, 174 Colo. 164, 482 P.2d 983. Evidence that defendant, being transported to scene of burglary, removed nylon stocking from his head there at time of arrest and threw it out the window of patrol car is evidence of guilt. *Poindexter v. State,* 1970, 255 Ind. 406, 264 N.E.2d 605. Swallowing slip of paper in course of a raid on a gambling establishment is evidence of guilt. *Scarborough v. State,* 1968, 3 Md.App. 208, 238 A.2d 297. Trying to conceal auto used in vehicular manslaughter, by pushing it into lake, is evidence of guilt. *Hubbard v. State,* Miss.1966, 187 So.2d 885. Face mask thrown away, *State v. Sockel,* Mo. 1972, 485 S.W.2d 393. Attempt to flush drugs down toilet, *State v. Sachs,* 1975, 264 S.C. 541, 216 S.E.2d 501. See also 1 Wharton's Criminal Evidence, 13 Ed., § 216, p. 462, et seq.

third issues raised on appeal, defendant asserts the district court erred in denying this second motion and further challenges the sufficiency of the evidence as a whole to support the jury verdict. While not identical, the questions raised by these two issues are very closely related and, as such, we shall review them together.

■ In our consideration of the first question, we have discussed the circumstances thoroughly supporting the guilt of the defendant developed in the State's case-in-chief. The defendant's defense supplied further evidence of guilt and bolstered the State's case. Further inference supporting guilty knowledge can be drawn from the fact that defendant, according to his testimony and that of Edwards, without question,[12] accepted the property herein as collateral on a loan (for $34.00) in striking disproportion to the alleged value of the property itself ($900.00). The defendant testified he thought the manifold was worth around $200.00, six times the amount of his loan. This loan-collateral situation creates the same inference of guilty knowledge as when the property is purchased by the receiver at a price grossly less than value. *State v. Mercer,* 1943, 114 Mont. 142, 133 P.2d 358. Thieves are in no particular position to bargain. They must rid themselves of stolen property as quickly as possible, and willingness to sell at a grossly reduced price betrays or should betray such a predicament.

Edwards, in the defendant's case, testified that Hoskins sold the manifold to him for $50.00 and then wanted it back; but, in the meantime, he had turned it over to the defendant as collateral for the loan of $34.00 by defendant to Edwards. Edwards testified that he told Hoskins he (Hoskins) would have to get it back from the defendant, and that is how the transaction between Hoskins and defendant came about.

Edwards was cross-examined vigorously by the deputy county attorney about his having informed the deputy county attorney that the story told on the witness stand was a fabrication conceived by the defendant; and Edwards was persuaded, through fear induced by the defendant, to so testify. The defendant testified along the same line as Edwards and added a denial that Hoskins paid him anything for the manifold. On rebuttal by the State, Officer Millay testified that Edwards had told him and the deputy county attorney that the story to which Edwards had testified was a fabrication induced by the defendant and that the defendant knew it was stolen—in fact the defendant had stolen it.

■ The State's rebuttal added a new dimension to the evidence against defendant. The jury was not obliged to believe the defendant nor Edwards. *Newell v. State,* Wyo.1976, 548 P.2d 8, reh. den. False exculpatory statements are circumstantial evidence of a consciousness of guilt. *Bennett v. State,* Wyo.1963, 377 P.2d 634; *State v. Bruner,* 1958, 78 Wyo. 111, 319 P.2d 863; *United States v. Rajewski,* C.A.7 1975, 526 F.2d 149, reh. den. 1976, cert. den. 426 U. S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833; *United States v. Tager,* C.A.10 1973, 481 F.2d 97, reh. den., cert. den. 415 U. S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 469, reh. den. 416 U. S. 952, 94 S.Ct. 1962, 40 L.Ed.2d 302; *People v. Showers,* 1968, 68 Cal.2d 639, 68 Cal. Rptr. 459, 440 P.2d 939; *State v. Norwood,* 1975, 217 Kan. 150, 535 P.2d 996. The cases are legion on this proposition; see *West's Digest System, Criminal Law,* ⬅ No. 351(10), subtitled, "Suppression or destruction of evidence, or misrepresentations to avoid suspicion or cast it upon another."

■ By instruction, the district court informed the jury that the guilty knowledge required of defendant at the time of receipt had to be actual and that such knowledge could be established either by direct or circumstantial evidence.[13] Fur-

---

12. The absence of inquiry by the defendant about Edwards' source adds strength to the State's case since that is also evidence of guilty knowledge. *People v. Piszczek,* 1949, 404 Ill. 465, 89 N.E.2d 387, reh. den. 1950.

13. The court's Instruction No. 5 was as follows:
 "Actual knowledge that the Carter high rise manifold unit, including two four barrel carburetors, was stolen is an essential element of the offense charged. You may not

ther, the court instructed that the possession of recently stolen property, if not satisfactorily explained, could, in light of surrounding circumstances, allow the reasonable inference that the person in possession knew the property had been stolen.[14] Neither instruction being objected to by either party, they became the law of this case. We will not review instructions not objected to when no plain error is shown nor claimed. *Cullin v. State,* Wyo.1977, 565 P.2d 445. They, in a general way, follow the form approved in *Barnes,* supra, approved by the United States Supreme Court.

 Because proof of guilty knowledge, like proof of intent, is rarely capable of establishment by direct evidence, circumstantial evidence—independent facts from which an inference of the ultimate fact to be established may rationally be drawn in light of common experience—most often is the only manner of proof available. *United States v. Scruggs,* C.A.6 1977, 549 F.2d 1097, reh. and reh. en banc den. As instructed by the district court, the circumstance of possession of recently stolen property may allow an inference of actual guilty knowledge but that circumstance must be considered in the light of the surrounding circumstances of possession. *Barnes v. United States,* supra. Perhaps from the variety of circumstantial evidence pointing to the defendant's guilt, other inferences relating to defendant's knowledge can be

drawn; yet it is for the jury, not this court on appeal, to sort out any conflicts. We will not interfere. *Janski v. State,* Wyo. 1975, 538 P.2d 271; *Reeder v. State,* Wyo. 1973, 515 P.2d 969; *Fresquez v. State,* supra. When a question is raised on appeal as to the sufficiency of the evidence to sustain the verdict of guilty, the standard of review is settled. In determining whether there exists substantial evidence, either direct, circumstantial, or both, in support of the verdict, we must view the evidence presented in the light most favorable to the prosecution, leaving out of consideration any evidence in conflict therewith, while drawing all reasonable inferences possible therefrom. *Fuller v. State,* Wyo.1977, 568 P.2d 900; *Jones v. State,* Wyo.1977, 568 P.2d 837; *Tryon v. State,* Wyo.1977, 567 P.2d 290. Under such a measure, the jury verdict here must be sustained. The record discloses more than sufficient substantial evidence to support the jury's verdict of guilt that at the time the defendant received the property in question, he had actual knowledge of its stolen character.

Affirmed.

ROSE, Justice, dissenting, with whom McCLINTOCK, Justice, joins.

My inquiry into the record—keeping in mind the elements which must be proved in order to sustain a conviction for receipt of stolen property—leads me to the unaltera-

---

find the defendant guilty unless you find beyond reasonable doubt that he knew the Carter high rise manifold unit, including two four barrel carburetors, was stolen. It is not sufficient to show that the defendant may have suspected or thought that the Carter high rise manifold unit, including two four barrel carburetors, was stolen.

"The fact of knowledge, however, may be established by direct or circumstantial evidence just as any other fact in the case."

14. The court's Instruction No. 6 was as follows:

"Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

"The term 'recently' is a relative term, and has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property, and all the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft, the more doubtful becomes the inference which may reasonably be drawn from unexplained possession.

"It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits you to draw from possession of recently-stolen property. If any possession the accused may have had of recently-stolen property is consistent with innocence, or if you entertain reasonable doubt of guilt, you must acquit the accused."

ble conclusion that there was insufficient evidence of guilty knowledge at the time of defendant's receipt of the stolen property. Without such guilty knowledge at this particular time, the crime of receiving stolen goods cannot—in my view—be committed. This being so, the trial court should have granted defendant's motion for acquittal at the end of the State's case. Secondly, with respect to the other issues pertaining to the sufficiency of the evidence, I must emphatically disagree that the jury's disbelief of the defendant's testimony was, in any manner, substantive corroborative evidence of the defendant's guilty knowledge that the property was recently stolen.

In order to sustain a conviction for receipt of stolen property, there must be evidence, direct or circumstantial, indicating that *when he received the goods the defendant had actual knowledge they were stolen.*[1] *State v. Reo,* Mo.App., 510 S.W.2d 211, 214. There must be direct evidence or an indication of circumstances which caused the defendant to *personally believe* the goods were stolen at the time of his receipt. *State v. Beale,* Me., 299 A.2d 921. Failure to pursue an inquiry as to the source of the goods is not sufficient to satisfy the element of actual guilty knowledge. *State v. Rowe,* 57 N.J. 293, 271 A.2d 897.

Assuming, arguendo, that there is sufficient evidence pointing to the defendant's receipt of the stolen property, what was the other evidence extant at the close of the State's case? It was:

1. Defendant's possession of stolen property;
2. Defendant's statement that "it came from Spencer's car";
3. Defendant's attempt to hide money received for the property;
4. A sale price of $50.00; and
5. Evidence that a *new* manifold would cost around $900.00.[2]

How does this evidence—viewed as a whole—give rise to a reasonable inference of guilty knowledge *at the time of receipt* ? It may be persuasively argued that such evidence gives rise to an inference that the defendant had guilty knowledge. It does not, however, in any way point a finger to the time when such guilty knowledge was obtained.

I would agree with the majority's opinion where it is said that mere possession of recently stolen property is insufficient to show guilty knowledge at the time of receipt. Given the absence of corroborating evidence in this case, the effect of the majority opinion is to make mere possession sufficient for that purpose—regardless of what the majority purports to do. In analysis, I would first challenge the assigning of *any* significance to the $900.00 replacement cost. Such evidence does not prove the value of the goods at the time of their sale. *McGill v. State,* 106 Ga.App. 482, 127 S.E.2d 332, 334. Even if it did, possession accompanied by a sale at a disproportionately low price is still insufficient to show guilty knowledge at the time of receipt. *State v.*

1. This element is not a prerequisite to a charge of selling a stolen automobile part in violation of § 31–11–103, W.S.1977. Section 31–11–103, supra, provides:

 "Any person who buys, sells, exchanges, trades, receives, conceals or alters the appearance of an automobile, or any automobile part, equipment, attachment, accessory or appurtenance, the property of another, or any person who attempts so to do, or any person who aids or abets in the commission or attempted commission of such act or acts, knowing or having reasonable cause to know and believe that such automobile or automobile part, equipment, attachment, accessory or appurtenance is stolen property shall, on conviction be guilty of a felony and shall be imprisoned in the state penitentiary not less than one (1) year, nor more than ten (10) years."

 I would consider that the effect of the opinion herein is to negate any meaningful distinction between this statute and § 6–7–304, W.S.1977, dealing with the receipt of stolen property.

2. The majority apparently gives some significance to the fact that Charles Edwards' subsequent conviction for perjury was recently upheld by this court. *Edwards v. State,* Wyo., 577 P.2d 1380. No independent proof of the falsity of Edwards' or the defendant's stories was adduced at the defendant's trial. As a result, I find it entirely inappropriate to make *any* reference to Edwards' conviction. To do so goes far beyond the bounds of this record and even further beyond the traditional rules for appellate review.

*Butler,* 9 Ariz.App. 162, 450 P.2d 128, 132. See, *State v. Mounts,* 120 W.Va. 661, 200 S.E. 53. Defendant's attempt to conceal the sale monies is incriminating evidence of guilty knowledge, but it does not prove guilty knowledge at the time of receipt. Likewise, even though defendant's statement as to the origin of the goods is damning evidence of guilty knowledge it does not furnish proof of when that knowledge was obtained. When it is remembered that almost two months elapsed between the manifold-theft and the defendant's sale thereof—and there being little or no evidence as to any intervening events—it is clear that the jury would have had to indulge in pure speculation in order to come to the conclusion that the defendant had actual guilty knowledge *at the time of his receipt of the manifold.*

Although this would, for me, be dispositive of the appeal, I find it necessary to address another aspect of the majority's discussion. Concerning the defendant's second and third issues—the sufficiency of the evidence as a whole—the majority would give corroborative effect to the defendant's failure to inquire as to the source of the goods and to defendant's purportedly false exculpatory statements. I have previously indicated that the failure to inquire may not, in my judgment, be equated, for proof purposes, with guilty knowledge at the time of receipt. Most frightening, however, is the majority's substitution of the jury's *disbelief* of a defendant's explanation of possession of stolen property for the necessary *substantive* [3] *evidence of guilty knowledge.* As succinctly stated in *State v. Taylor,* Mo., 422 S.W.2d 633, 637–639:

" . . . The jury evidently disbelieved his explanation. But in a criminal case, where defendant is presumed to be innocent and where the burden of proof on the state is greater than that on the plaintiff in a civil case, is the effect of disbelief of defendant's explanation the equivalent of proof to the contrary? We

do not believe that defendant's failure to explain satisfactorily to the jury permits an inference of guilty knowledge on his part at the required time which will take the place of substantive proof. . . .

\* \* \* \* \* \*

"It is the duty of the state to prove guilty knowledge on the part of defendant, not the duty of the defendant to prove he had no such knowledge. *Defendant did not convince the jury of his defense, but this does not establish guilty knowledge on his part or amount to some sort of admission of guilty knowledge sufficient to make a submissible case against him in the absence of substantive proof of the elements of the offense.* If so, no defendant, no matter how innocent, could take the stand without fear that if the jury should fail to accept his explanation or defense and find against him, the fact they did not believe him would, if this view were to prevail, be treated as supplying a missing link in the state's case and as independent evidence of a fact otherwise unproved, so that his conviction would be upheld even if the state had failed to make a submissible case on some material aspect denied by him in his testimony. If disbelief operates as proof, then the jury may always find on any issue unfavorably to a defendant who offers evidence favorable to himself, despite lack of other evidence on the issue. This is not the law. . . .

\* \* \* \* \* \*

"The effect of disbelief by the jury of the defendant's testimony is, of course, persuasive in the jury's arriving at their verdict, but it is not probative and does not constitute substantive proof on a material issue not theretofore proved. The fact is that upon the somewhat bizarre record before us, defendant's actual knowledge with respect to the engine being stolen at the time he bought or received it remains a matter of speculation

---

**3.** It is to be observed that the majority would *accept* certain of the defendant's testimony— dealing with loan-collateral situation—as true, thus providing evidence of disproportionate sale values, but would *reject* the defendant's explanation as a whole, thus providing evidence of a false exculpatory statement. I don't think we can have it both ways.

and conjecture, not stronger than a suspicion of guilt, and this, of course, is not sufficient." [Emphasis supplied]

See, also, *State v. Woods,* Mo., 434 S.W.2d 465, 468–469. It may, indeed, be that where there is *independent* proof of circumstances indicating the false nature of an explanation, then such independent proof may be sufficient upon which to sustain a conviction. See, *Carter v. State,* 10 Md. App. 50, 267 A.2d 743. But, as here, where we only have a jury's disbelief of a defendant's testimony, it is improper to conclude— for the purposes of appellate review—that the defendant's explanation provides evidence of guilty knowledge at the time when the property was received. Adoption of the principle embraced by the majority—as applied to facts such as these—can only serve to have a chilling effect on a defendant's decision to take the stand. The cases cited by the majority having to do with the effect of the jury's disbelief of the defendant's testimony are distinguishable from this case in fact and law and do not, in my opinion, stand for the principle the majority wants to embrace.

For these reasons, I must refuse to join in the majority opinion.